No. 68,687

STATE OF KANSAS, *Appellee,* v. VICTOR VAUGHN, *Appellant.*

(865 P.2d 207)

Opin-
ion filed December 10, 1993.

*William F. Dunn*, of Comer & Dunn, of Edwardsville, argued the cause, and *M. Kristine Paredes*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the brief for appellant.

*Robin A. Lewis*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Victor Vaughn, from his conviction for aggravated robbery.

The robbery occurred in 1981. The defendant was convicted in September of 1991. He alleges on appeal that he was denied a speedy trial and, in the alternative, that the trial court committed trial errors.

On the evening of October 16, 1981, Janet Schrunk, age 17, was the sole employee working at Le Jardin Flowers, a shop in Prairie Village, Kansas. At that time, Angie Surdez, age 15, was the sole employee working at Laura's Fudge Shop. The fudge shop and flower shop have an inside connecting door. At approximately 8:15 p.m., Angie Surdez indicated to Janet Schrunk that two men loitering outside the shops looked suspicious. Several minutes later, the two men entered the fudge shop.

One man remained in the fudge shop, and the second man went into the flower shop. The man who remained in the fudge shop put on a mask, took out a gun, and robbed Angie Surdez of both the store's money and Angie's purse and its contents.

The second man entered the flower shop and went behind the counter. He displayed a handgun and demanded money. He was given the contents of the cash register and went back through the connecting door to the fudge shop.

Janet Schrunk was able to provide a description of the man who robbed her and made a composite of him for the police. She later looked through some mug books in Kansas City, Missouri, but was unable to locate a picture of the man who robbed her. In April 1982, she was shown a photo lineup which she

testified had at least eight pictures in it, and she was able to identify the defendant as the man who robbed the flower shop.

Angie Surdez testified at trial that she also looked at the mug books in Kansas City and was unable to locate a picture of either man. She testified that she did identify the man who robbed her from a photo lineup. She identified the defendant in court in 1991 as looking like the man who went into the flower shop in 1981.

Donald Cox was a detective with the Prairie Village Police Department at the time of the 1981 incident. Cox testified that he presented the photo lineup to the two witnesses some six months after the robbery. Cox testified that he had never indicated to a witness at a photo lineup which person the witness should pick out. Conflicting evidence was presented that Cox had on a prior occasion pointed out the photo of a person he wanted the witness to identify as having committed a robbery.

Cox further testified that a confidential informant, Clay Miller, had named Victor Vaughn as one of the men involved with the robbery of the flower shop and fudge shop. Clay Miller testified at trial that he did not know Victor Vaughn and had never heard of him at the time he furnished confidential information to Officer Cox. He denied that he had furnished Vaughn's name to Cox.

The defendant's theory was that he was mistakenly identified as being involved in the robbery. The facts concerning this theory will be developed as they relate to the specific issues raised by the defendant.

The defendant was found guilty of aggravated robbery and sentenced to a term of incarceration of 15 years to life. That sentence was doubled pursuant to the Habitual Criminal Act, and the defendant's sentence was determined to be subject to K.S.A. 21-4618 (the gun statute).

## I. CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL

The crime for which the defendant was charged was committed on October 16, 1981, and the complaint was filed on May 11, 1982. The defendant first appeared in court on March 7, 1991. He was not convicted until September 11, 1991, more than nine years after the complaint was filed. The defendant contends that this delay violated his constitutional right to a speedy trial.

The United States Supreme Court considered the Sixth Amendment right to speedy trial in *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S.Ct. 2182 (1972). There the Court recognized that deprivation of the right to speedy trial does not in itself automatically prejudice a defendant's ability to defend himself and that there is no fixed time limit to determine when the right to speedy trial has been denied. *Barker*, 407 U.S. at 521-22. Rather, determination of whether the right has been violated must be based on an analysis of the facts and circumstances of each case.

The *Barker* Court set forth a balancing test which weighs the conduct of both the State and the defendant in determining whether the right to a speedy trial has been violated. Four factors are considered: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his or her right, and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530. This court has adopted the *Barker* balancing test for determining whether an accused's constitutional right to a speedy trial has been violated. *State v. Brown*, 249 Kan. 698, Syl. ¶ 6, 823 P.2d 190 (1991); *State v. Otero*, 210 Kan. 530, 532-533, 502 P.2d 763 (1972).

The trial court here heard the defendant's motion to dismiss on the speedy trial issue on September 9, 1991. In denying the defendant's motion, the trial court stated:

"[T]hat's the posture of the law and the law obviously places upon you as a prisoner out of state upon notice of a warrant being filed against you if you choose to seek a timely disposition of that warrant under the Uniform Act on Mandatory Disposition of Detainers. Now, if you do that, fine. If you do not, then you forfeit, in effect, that procedural right."

The trial judge also stated:

"Mr. Vaughn, it is a one-way street once you are notified of the fact that another jurisdiction wants you on some specific charge. At that point, the ball is in your court, as the expression goes, and it's up to you to seek and employ the procedural statutes of Kansas to seek a timely disposition of those charges against you. If you don't do that and if you sit in Missouri or someplace else serving the sentence without taking the appropriate steps under our disposition of detainers procedural act, then that is your choice and it is your consequence."

Although the defendant did not employ the procedure designated by the Kansas Legislature by which persons imprisoned

outside the state may request final disposition of charges pending against them, K.S.A. 22-4401 *et seq.* (Interstate Agreement on Detainers Act), the trial judge was not correct in stating that this was the only manner by which Vaughn could invoke the right to a speedy trial. A defendant's constitutional right to a speedy trial exists notwithstanding his or her lack of compliance with the Interstate Agreement on Detainers.

"It is a well-established rule that the Legislature may, within reason, define what is meant by the constitutional guarantee of a speedy trial." *State v. Dolack*, 216 Kan. 622, Syl. ¶ 3, 533 P.2d 1282 (1975). This the legislature did in enacting the Interstate Agreement on Detainers Act. That does not end discussion of the issue, however. *Cf. Barker*, 407 U.S. at 523-24, 528 (Court rejected restricting speedy trial right to cases where the accused has demanded a speedy trial); *Ekis, Petitioner v. Darr*, 217 Kan. 817, 826-27, 539 P.2d 16 (1975) (after finding that the defendant had failed to comply with the Interstate Agreement on Detainers, this court continued to apply the *Barker* balancing test). Analysis of the defendant's right to a speedy trial under the Constitution is appropriate despite his failure to comply with the Agreement, and his failure to request a trial pursuant to the Interstate Agreement on Detainers is a factor in the balancing test.

Nearly 10 years elapsed from the date this offense was committed to the date the defendant was convicted, and nearly nine years elapsed from the date the defendant was charged with this offense to the date he first appeared in court. The length of delay, therefore, is substantial.

The defendant was incarcerated in Jefferson City, Missouri, prior to the time the complaint was filed. He received notice of the pending charges as evidenced by his attempts on October 13, 1983, and May 18, 1987, to have the charges dismissed. The 1983 motion included the defendant's Jefferson City, Missouri, address. The 1987 motion also contained the defendant's address and notice of his custodial status with the Missouri Department of Corrections.

The State has the duty to bring a defendant to trial; the defendant has no such duty. *Barker*, 407 U.S. at 527. See *Otero*, 210 Kan. at 533. However, the *Barker* Court emphasized that it is difficult for a defendant to prove denial of the right to speedy

trial when the defendant has failed to assert that right. *Barker*, 407 U.S. at 532.

The defendant's counsel conceded here that he did not formally file a request for disposition of the detainer. However, the defendant claims he made several efforts to resolve this case which show his assertion of the right to timely disposition. He filed a motion for a bill of particulars on October 13, 1983, alternatively seeking dismissal. His May 18, 1987, motion to quash warrant clearly indicates his claim of lack of prosecution and asserts his right to timely disposition of this case, but the motion does not request a trial. The defendant and his counsel also stated that the defendant hired an attorney in 1988 to look into the status of this case, but that attorney was unable to obtain any information because the prosecuting attorney's office was unable to find a record of Vaughn's case. No evidence was offered on this point, and we are unwilling to weigh arguments as evidence.

In *Barker*, 407 U.S. at 534-35, the Court acknowledged that the defendant's failure to object to the multiple continuances sought by the State was due to his desire to delay the proceedings in the hopes that his codefendant would be acquitted. Here, the defendant wanted his case dismissed as evidenced by the two motions he filed while he was incarcerated in Missouri.

Defendant never requested a trial. In fact, he was going to great lengths in an effort to avoid a trial and to otherwise dispose of this case. The defendant did not specifically assert the right to speedy trial here, and that fact weighs heavily against him.

The *Barker* Court indicated three factors which may show prejudice: oppressive pretrial incarceration; anxiety and concern of the accused; and, most important, impairment of the defense. *Barker*, 407 U.S. at 532.

The defendant was not subject to pretrial incarceration here. He was subject to some anxiety and concern as evidenced by his attempts to resolve this case while he was incarcerated in Missouri. There is no showing that his defense was impaired by the delay. The defendant has not established that he was prejudiced by the delay here.

Multiple evidence in this case was lost due to the delay in bringing the defendant to trial. The lost evidence included police reports. Further, the photo array from which Janet Schrunk iden-

tified the defendant as the man who robbed her was not preserved. It is speculation, however, whether the missing police reports would have provided additional information concerning the offense, and nothing in the record indicates that preservation of the photo array would have established defects in the procedure.

The defendant relied on an alibi defense at trial. One witness testified as an alibi witness, clearly recalling the October 16, 1981, date in question. The defendant also attempted to rely on evidence that someone else (Jay Brahm) had actually committed the offense. A witness testified that he introduced Eddie Baxter (Vaughn's codefendant) to Jay Brahm (whom Baxter claimed was with him, rather than Vaughn, when the offense for which Vaughn was convicted was committed) sometime in the middle of October, but he was unable to recall the exact date.

The defendant does not argue that his defense was impaired due to the lost memories of potential witnesses. Nor does he claim he was unable to locate other alibi witnesses. In fact, the delay may have impaired the prosecution from impeaching the defendant's witness.

"[T]he inability of a defendant adequately to prepare his case skews the fairness of the entire system. . . . There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." Barker, 407 U.S. at 532.

Here, impairment to the defendant's defense because of the lost memories of witnesses is only speculative; there is nothing in the record to indicate that other witnesses exist who could not be located or that other testimony is unavailable.

This court in Otero, 210 Kan. 530, applied the Barker balancing test and found that, where the defendant was incarcerated out of state but upon notice of the charges wrote the county attorney in Kansas demanding that he be returned for trial, a delay of more than eight years violated the defendant's constitutional right to a speedy trial. The court declined to presume prejudice arising from the lengthy delay, but balanced the factors and held that the defendant had been deprived of his right to a speedy trial. Otero, 210 Kan. at 536.

The United States Supreme Court has indicated that prejudice may be presumed. The Court stated that "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett v. United States,* 505 U.S. ___, 120 L. Ed. 2d 520, 530, 112 S. Ct. 2686 (1992). The Court went on to state:

"[W]e generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria [citation omitted], it is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett,* 120 L. Ed. 2d at 531.

The Court went on to hold that an eight-year delay between indictment and arrest presumptively prejudiced the defendant and deprived him of his right to speedy trial.

"[N]one of the four factors identified [in *Barker*] is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker,* 407 U.S. at 533. When the right to a speedy trial has been violated, dismissal is the only remedy. *Barker,* 407 U.S. at 522; *Strunk v. United States,* 412 U.S. 434, 439-40, 37 L. Ed. 2d 56, 93 S. Ct. 2260 (1973).

We are persuaded that the defendant in this case was incarcerated out of state and failed to exercise a means readily available to him to obtain a speedy trial. The defendant did not seek trial. What the defendant wanted was to have his case dismissed, and he made numerous efforts to do so, including filing actions in Missouri. The defendant was aware that there was a warrant and hold placed on him and knew, or should have known, the proper procedure if he wanted to come back to Kansas for trial. We cannot tell from the record before us whether the defendant was prejudiced or helped by the delay largely because the defendant did not offer evidence to show prejudice. The evidence offered by the State is to the effect that the defendant was not prejudiced, and the defendant's effort to counter that evidence by speculation is insufficient. We hold that the trial court did not err in finding that the defendant had not been denied his constitutional right

to speedy trial, although the trial judge may have given the wrong reason in so holding.

## II. UNAVAILABLE WITNESS

The defendant contends that the trial court erred in refusing to declare Eddie Baxter an unavailable witness so as to permit the defendant to introduce at trial Eddie Baxter's testimony from the defendant's preliminary hearing. Fifteen minutes before the fudge shop and flower shop were robbed, there was a robbery at a Fox Photo store some five blocks away. Eddie Baxter was one of two males who robbed the Fox Photo store and the fudge shop. The description of the second robber given by victim Bryan Slater at the Fox Photo store was somewhat similar to that given by Janet Schrunk and Angie Surdez of the defendant, Victor Vaughn, but there were discrepancies between the three descriptions and Victor Vaughn's actual physical appearance. The trial judge did not allow testimony concerning the Fox Photo store robbery to be introduced in the Vaughn trial.

Baxter attended the preliminary hearing after receiving an out-of-state subpoena from the State. The defendant called Baxter to testify, and the substance of his testimony at the preliminary hearing concerned his involvement in the aggravated robberies of the Fox Photo store and the fudge shop. Baxter testified that he did not know the defendant at the time of the robberies and that the defendant was not with him when he and a third person committed the robberies. The State cross-examined Baxter, attempting to impeach him with his prior convictions involving truth and veracity. Baxter said he had only met the third person who committed the robberies once and was not sure of his name but thought his name was Jay Brahm.

The defendant Vaughn sought to have Baxter declared an unavailable witness at trial. Defense counsel stated, as an officer of the court, that she had attempted to locate Baxter but was unsuccessful. She indicated she had talked to Baxter on the phone on several occasions and that he was evasive and refused to give her a current address or phone number. She typically contacted Baxter by leaving a message with his mother in Springfield, Missouri, and Baxter would then call her collect. Defense counsel stated that Baxter had promised to testify on behalf of the de-

fendant, both at this trial and at an earlier trial which ended in a mistrial. He had fully cooperated at the earlier trial.

Defense counsel had arranged to meet Baxter at her office on the Sunday before trial and serve him with a subpoena at that time. She stated Baxter had not been in her office since she had been informed of the new trial date. She indicated that the address used by the State was that of Baxter's mother in Springfield, Missouri, and that she was aware Baxter was no longer at that address. She further stated that she had every reason to expect cooperation from Baxter until Baxter's mother told her the weekend before trial that the mother had been unable to locate him. Baxter failed to keep the scheduled Sunday meeting and did not appear for the defendant's trial.

Defendant's counsel further stated that she attempted to locate Baxter through friends and through his parole officer but was unsuccessful.

The trial court stated that "substantial further efforts on the part of the defense to secure his personal appearance were appropriate that were not accomplished." We can only speculate as to what the trial court felt counsel failed to do. Defense counsel had no address for Baxter, and had checked with Baxter's mother, friends, and parole officer, none of whom could furnish his address or knew his whereabouts.

An exception to the hearsay rule is recognized

"if the judge finds that the declarant is unavailable as a witness at the hearing[.] . . . [T]estimony given as a witness in another action or in a preliminary hearing or former trial in the same action . . . when . . . the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered [will be received]." K.S.A. 1992 Supp. 60-460(c).

" 'Unavailable as a witness' includes situations where the witness is . . . (4) absent beyond the jurisdiction of the court to compel appearance by its process, or (5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts." K.S.A. 60-459(g).

The standard for determining if a witness is unavailable follows the "reasonable diligence rule" requiring "a good faith effort to obtain the witness' presence at trial." *State v. Watie, Heard and Heard*, 223 Kan. 337, 340, 574 P.2d 1368 (1978). The term "rea-

sonable diligence" has not been precisely defined, but it is clear that the availability of a witness turns on the totality of the facts and circumstances of each case. *Watie*, 223 Kan. at 340; *State v. Bey*, 217 Kan. 251, 254, 535 P.2d 881 (1975). "The inability of a witness to appear must be established by a ruling of the trial court or by agreement of counsel. The sufficiency of proof of unavailability is a question for the trial court within its discretion and its ruling will not be disturbed unless an abuse of discretion is shown." *State v. Steward*, 219 Kan. 256, Syl. ¶ 6, 547 P.2d 773 (1976).

This court has addressed the unavailability of witnesses numerous times. We held no abuse of discretion in finding the witness unavailable in the following cases, for example: *State v. Alderdice*, 221 Kan. 684, 686-87, 561 P.2d 845 (1977) (subpoena delivered to witness' mother, and when the State realized witness' whereabouts were unknown, it dispatched officers to locate the witness; held, witness unavailable based on testimony of the officers who unsuccessfully searched for the witness); *Bey*, 217 Kan. at 254-55 (State issued subpoena for witness six days before trial, attempted to telephone witness upon realizing that subpoena was not served, discovered witness had moved to a new city, and attempted to have sheriff's deputies in the new city contact the witness but did not have a new subpoena issued; held, witness unavailable because witness had been willing and cooperative, giving State no reason to anticipate difficulty in serving the subpoena, and issuing a subpoena to witness' new address would have been useless considering that the sheriff's office was not able to locate him); *State v. Washington*, 206 Kan. 336, 338-339, 479 P.2d 833 (1971) (multiple subpoenas had been issued, and investigator for State testified as to his efforts over the previous six months to locate the witness).

The trial court did not request evidence and expressed no dissatisfaction with accepting counsel's statements about her efforts to locate Baxter. Counsel was present and could have testified had the court based its ruling on counsel's failure to offer evidence. Obviously, counsel should have offered evidence.

We are persuaded that the trial court erred in not permitting Baxter's preliminary hearing testimony to be admitted at the trial.

Defense counsel, at the beginning of the trial and before jeopardy attached, told the court that she had talked to Baxter on the preceding Friday (via a collect telephone call) and that he had been very cooperative and had promised to be in her office on Sunday. When he failed to keep the appointment, she learned that he had not been reporting to his parole officer and that his parole officer had no current address or telephone number for Baxter.

Under the totality of the circumstances, we find it was reversible error to refuse to admit Baxter's testimony from the preliminary hearing.

## III. LIMITING THE EXAMINATION

Defendant claims that the trial court violated his constitutional rights by limiting his examination of two witnesses. His complaints go to Detective Cox and the photo lineup he showed to Bryan Slater, the victim in the Fox Photo store robbery. He also complains that he was not permitted to examine Bryan Slater concerning the description of the robber who accompanied Eddie Baxter in the Fox Photo store robbery, nor was he permitted to question Slater extensively enough about the photo lineup Detective Cox showed Slater.

The State initially charged both Eddie Baxter and Victor Vaughn with robbery of the Fox Photo store. Bryan Slater, who was working at Fox Photo, identified Eddie Baxter from a photo lineup as one of the men who robbed him. It appears that the State took the position at the preliminary hearing that both robberies were committed by two men, with the evidence suggesting that Eddie Baxter was involved in both incidents, and, therefore, if Victor Vaughn committed the second robbery, he also committed the Fox Photo robbery. The trial judge at the preliminary hearing did not bind Victor Vaughn over for trial on the Fox Photo robbery charge and dismissed that count.

At some time after the preliminary hearing, defense counsel talked to Bryan Slater and learned for the first time that Slater was unable to pick Eddie Baxter out of the initial photo lineup until Detective Cox suggested which picture he should identify.

The trial court ruled the evidence concerning the Fox Photo robbery was totally inadmissible and refused to permit any tes-

timony concerning that robbery but did permit Bryan Slater to testify that Detective Cox had impermissibly suggested who he should pick out of a photo lineup. Slater was not allowed to testify that the photo lineup involved Eddie Baxter or the time, date, or place of the Fox Photo robbery.

Bryan Slater was permitted to testify as follows:

"Q. (By Ms. Asher [counsel for defendant]) Bryan, were you shown a photographic line-up by a Detective Cox approximately ten years ago?

"A. Yes I was.

"Q. And do you remember how many photographs were in that photographic line-up?

"A. There was eight or ten photographs in the line-up.

"Q. Okay. And was there a particular person in that line-up that you picked out?

"A. Um, not at first but, yeah, I did eventually pick somebody.

"Q. Could you tell us what you did when you looked at the photographic line-up?

"A. Well, I looked at the photographs for quite some time, about five minutes, and then, um, I told Detective Cox that I couldn't pick anyone from the line-up. That I didn't think that there was a person was in the line-up and then . . . .

"THE COURT: Counsel, let's keep our questions direct for a simple response. Let's avoid an opportunity for a narrative response that might bring information that we don't want before the jury.

"Q. (By Ms. Asher) Okay. What did Detective Cox do after you told him you couldn't pick anybody out of the line-up?

"A. He pointed to one of the pictures and said, 'Are you sure it's not this person? Are you sure it's not this guy? Might it be this guy right here? Are you sure it's not this one?' You know, like that, several times.

"Q. Okay. Did he do anything else? Did he show you anything else?

"A. Well, then I eventually said, yeah, yeah I guess that is the person and then he pulled that photograph away from the line-up and set it in front of me and then he pulled another photograph from the line-up and set them side by side and he said both these photographs are of the same person and I looked at them and they were.

"Q. Okay. And did he tell you anything about Mr. Baxter after that?

"MS. LEWIS [counsel for State]: Well, Judge, I object.

"THE COURT: Counsel, we're not discussing Mr. Baxter, are we? Let's talk about the implication and what Detective Cox did only. Let's not inject names; all right?

"Q. (By Ms. Asher) Did he do anything else in regards to the line-up that you remember, Bryan?

"A.   Um, he pointed out the fact that there was two pictures of the same person."

The defendant argues that the Bryan Slater and Angie Surdez/ Janet Schrunk robberies were committed by the same two men, and therefore he should have been permitted to question Bryan Slater and Detective Cox about details concerning the Fox Photo robbery. Defendant's theory is that his proffered examination of Bryan Slater and his cross-examination of Detective Cox would have shown that Slater's description of the man who accompanied Eddie Baxter during his robbery coincided with Angie Surdez' description of the man who entered the flower shop while she was being robbed, but that neither description fit the defendant. The defendant contends this fits with his theory that Jay Brahm, and not the defendant, committed the robberies with Eddie Baxter. The defendant claims that limiting his examination of Detective Cox and Bryan Slater violated his constitutional rights.

The admission of evidence rests in the sound discretion of the trial judge. See *State v. Baker*, 219 Kan. 854, Syl. ¶ 3, 549 P.2d 911 (1976); *Herbstreith v. de Bakker*, 249 Kan. 67, Syl. ¶ 11, 815 P.2d 102 (1991); *State v. Pearson*, 234 Kan. 906, 923-924, 678 P.2d 605 (1984). The scope of both direct and cross-examination is subject to reasonable control by the trial court. *Herbstreith*, 249 Kan. 67, Syl. ¶ 11; *Pearson*, 234 Kan. at 923-24.

"The primary test of admissibility of evidence is its relevancy to the issue in question."

"Relevancy is more a matter of logic and experience than of law. Evidence is relevant if it renders the desired inference more probable than it would be without the evidence, or if it has any tendency in reason to prove any material fact."

"To be relevant, evidence of collateral facts must be confined to the issues, but need not bear directly on them. There must be some natural, necessary or logical connection between such evidence and the inference or result it seeks to establish." *Baker*, 219 Kan. 854, Syl. ¶¶ 1, 2, 4.

The evidence proffered by defendant bears a relation to his theory that someone else committed the robbery. The trial court erred in refusing to permit the defendant's proffered testimony of Detective Cox and Bryan Slater.

"When the state relies on direct evidence, circumstantial evidence that someone other than the defendant committed the crime charged is irrelevant in the absence of other evidence to

connect such third person with the crime." *State v. Calvert*, 211 Kan. 174, Syl. ¶ 3, 505 P.2d 1110 (1973); accord *State v. Brown*, 230 Kan. 499, 499-500, 638 P.2d 912 (1982). Here, a victim positively identified the defendant in a photo array within seven months of the incident and again at trial. The State relied on direct, rather than circumstantial, evidence to connect the defendant to the crime. However, Baxter's testimony would have been evidence connecting a third party to the crime. Therefore, the proffered evidence concerning the description given by Bryan Slater of the man accompanying Eddie Baxter in the Fox Photo robbery is relevant. The trial court erred in excluding it.

## IV. SENTENCE

The defendant also argues that the trial court abused its discretion in sentencing him to a base term of 15 years to life when the codefendant received a sentence of only 5 to 20 years for the same offense and in refusing to modify the sentence. The defendant does not, however, appear to claim that a sentence of 15 years to life in itself was unjustified; his claim that it was an abuse of discretion is based merely on the substantially shorter sentence the codefendant received. Having granted a new trial, this issue is moot.

## V. ISSUE RAISED BY DEFENDANT

The defendant purported to amend his counsel's discussion of Issue IV and to add an Issue V. Neither of the defendant's contentions have merit.

For his amendment of Issue IV, the defendant claims that he received two 15-year to life sentences as well as a 5- to 20-year sentence. This is not supported by the record. He was sentenced to 15 years to life on one count of aggravated robbery, and that sentence was enhanced to 30 years to life pursuant to the Habitual Criminal Act. In any event, our granting of a new trial renders this issue moot.

The defendant's purported Issue V is also meritless. Issue V raises a Fifth Amendment and Fourteenth Amendment claim as preserved by paragraph 8 of his motion for new trial. Paragraph 8 states: "The Court erred in not granting a mistrial when the State impermissibly questioned a witness as to the identity of the person who robbed her, referring to the Defendant, with the

words 'beyond a reasonable doubt' thereby invading the providence of the jury." The defendant contends that "[t]he question and issue of 'reasonable doubt' progresses to the closing argument or statements made by the District Attorney to the jury that I could be found guilty by less than reasonable doubt."

The exchange referred to by this issue is the State's questioning of Janet Schrunk:

"Q. (By Ms. Lewis) Now, can you look around the courtroom and see if you can identify the man that, if you can identify beyond a reasonable doubt —

"MS. ASHER: — Objection, Your Honor, that is impermissible of the State to define reasonable doubt.

"MS. LEWIS: I didn't define it, Judge.

"MS. ASHER: Your Honor, that is an objectionable question.

"THE COURT: Sustained as to the form. Please rephrase.

"Q. (By Ms. Lewis) Can you look around the courtroom and identify anyone or identify anybody that robbed you on that particular occasion on October 16, 1981?"

Any error in the form of the State's question was cured at the time of trial. The trial court thoroughly instructed the jury, including instructions that the State had the burden of proving its claims beyond a reasonable doubt and that the remarks of counsel do not constitute evidence. The defendant's rights have not been violated in the manner he asserted in Issue V.

Reversed and remanded for a new trial.