NOT DESIGNATED FOR PUBLICATION

No. 121,440

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

KIM ORDWAY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed August 7, 2020. Reversed and remanded.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Shannon S. Crane*, of Hutchinson, for appellee.

Before MALONE, P.J., MCANANY, S.J., and BURGESS, S.J.

PER CURIAM: The State appeals the district court's decision dismissing a charge of battery of a state correctional officer against Kim Ordway based on a violation of his right to a speedy trial under the Sixth Amendment to the United States Constitution. For the reasons we will explain in this opinion, we conclude the district court erred in finding a constitutional speedy trial violation, so we reverse the district court's dismissal of the criminal charge against Ordway and remand for further proceedings.

1

FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 2011, the State charged Ordway with two counts of battery of a state correctional officer. The charges stemmed from a January 2008 incident at the prison where Ordway was serving a sentence in another case. Ordway will serve that sentence until at least June 2022.

The record reflects that the State filed a detainer with the Kansas Department of Corrections (KDOC) on May 6, 2011. Personnel at the KDOC tried to serve the detainer on Ordway on May 11, 2011, but the detainer form states: "I/M [Inmate] refused to sign/Received Copy." The detainer form advised Ordway that a hold was being placed on him by the Reno County Sheriff Department based on two counts of felony battery of a state correctional officer. The detainer form advised Ordway of his right to request disposition of the criminal complaint pursuant to K.S.A. 22-4301.

For reasons unexplained in the record, Ordway received another notice of the untried complaint from Reno County on January 8, 2019. A few days later, Ordway requested disposition of the case under the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 2018 Supp. 22-4301 et seq. The district court held the first appearance on February 6, 2019, and the arrest warrant was served on Ordway at the hearing.

In early March, Ordway moved to dismiss the charges arguing that the five-year statute of limitations had run. The State responded that the limitations period had not run because right after filing the charges the State had sent a detainer notice to the KDOC, and Ordway was served with the detainer in May 2011.

On April 11, 2019, a magistrate judge held a preliminary hearing and addressed Ordway's motion to dismiss, but there is no transcript of the hearing in the record. There

2

is also no journal entry or order reflecting the outcome of that hearing, but an entry on the "Register of Actions" says that the court denied the motion: "Motion Hearing, State calls 2 witnesses, Admits Exhibit 1, Court denies Defendant's Motion finding State Complied with notice under UMDDA." That entry also says that Ordway was bound over only on Count 1 of the complaint and Count 2 was dismissed by the State.

On May 22, 2019, Ordway moved to dismiss the case again, this time asserting a violation of his right to a speedy trial under the Sixth Amendment to the United States Constitution. He argued that the State had taken no action on his case until January 2019 when he filed a disposition request. He also argued that the State had not timely prosecuted the case under K.S.A. 2018 Supp. 60-241(b), noting that no return of service was ever filed with the district court for the arrest warrant back in 2011 and that no witness could testify that he ever received the complaint.

The district court held a hearing on the second dismissal motion on June 17, 2019. Ordway testified at the hearing. According to Ordway, prison officials had disciplined him and another inmate named Washington for the incident underlying his charges. Ordway could not remember Washington's first name or KDOC number; he had written that information down at some point but had since misplaced it. Nor could he remember the names of the 10 to 15 other inmates who witnessed the incident; he moved to another part of the prison after the incident and never had contact with those inmates again.

The State called no witnesses at the hearing but the prosecutor asked the district court to admit into evidence State's Exhibit No. 1, the detainer the KDOC tried to serve on Ordway on May 11, 2011. The prosecutor also asked the district court to take judicial notice that the exhibit had been admitted into evidence at the preliminary hearing. The district court did not rule on the prosecutor's request to admit State's Exhibit No. 1, but Ordway lodged no objection to the admission of the exhibit.

3

After hearing arguments of counsel, the district court ruled from the bench on the motion to dismiss. The district court began by stating that it had reviewed the case history and the decision in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). The district judge referred to the detainer that the prosecutor had offered into evidence and stated that "I do agree with Mr. Stanton that places the obligation on the defendant if he wants to get the matter resolved." But the district judge then stated:

> "The more concerning part to me is the fact that this allegedly happened in 2008. And just strictly, without looking at the intervening happenings, which there aren't many, trying to come up with witnesses even if you're not in custody, is going to be challenging. I was thinking back to whether I would remember something that happened 11 years ago in detail. Depends on the event but I just, I find fundamental fairness dictates granting this motion. A tough call. Not clearcut by any means, but that's my decision."

The district court later filed an order dismissing the case without prejudice. The State timely filed a notice of appeal under K.S.A. 2019 Supp. 22-3602(b)(1).

ANALYSIS

On appeal, the State claims the district court erred in granting Ordway's motion to dismiss under the circumstances and facts of this case. Conversely, Ordway argues that the district court did not err in dismissing the charge against him for violating his right to a speedy trial.

This court applies a mixed standard of review to this issue, reviewing the district court's factual findings on the speedy trial claim for substantial evidence and the ultimate legal conclusion drawn from the evidence de novo. *State v. Owens*, 310 Kan. 865, 868, 451 P.3d 467 (2019). In reviewing factual findings, this court does not reweigh conflicting evidence or assess witness credibility; it simply accepts as true all evidence and reasonable inferences from that evidence that support the district court's findings.

4

*State v. Barrett*, 309 Kan. 1029, 1042, 442 P.3d 492 (2019). But when the material facts supporting a district court's decision are not in dispute, the court's decision presents a question of law over which an appellate court has unlimited review. See *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The Sixth Amendment to the United States Constitution provides those accused of crimes with "the right to a speedy and public trial." That right applies to the states through the Fourteenth Amendment's Due Process Clause. *Owens*, 310 Kan. at 869. To determine whether that right has been violated, courts consider four nonexclusive factors: (1) the length of delay; (2) the reasons for delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530; *Owens*, 310 Kan. at 869. No factor is necessary or sufficient to prove a Sixth Amendment violation; courts consider them all together along with any other relevant factors. *Owens*, 310 Kan. at 869.

The State makes two preliminary points that we will address before moving onto the *Barker* factors. First, the State argues that it's unclear from the record whether the district court dismissed the case on statutory or constitutional speedy trial grounds. But the court's findings begin and end with *Barker*, the seminal Sixth Amendment speedy trial case. The court started by noting that it had just reviewed *Barker* and its multi-factor test that day. And it closed by finding that one of those factors, the prejudice from the delay, required dismissal. The district court's comment that "fundamental fairness" required dismissal strengthens the case that it found a constitutional violation. That line came right after the district court found that the delay prejudiced Ordway because he could no longer remember the incident clearly. *Barker* said that prejudice of that kind "skews the fairness of the entire system," 407 U.S. at 532. So the district court's fairness comment was likely a nod to *Barker*, which it had reviewed that day. The district court's findings leave no doubt that it found a constitutional violation, not a statutory one.

5

Second, even if the district court relied on the constitutional speedy trial right, the State says that Ordway waived that right by not complying with the UMDDA. The UMDDA provides people incarcerated in Kansas with a statutory right to request the disposition of other criminal charges pending against them in the state. *State v. Burnett*, 297 Kan. 447, Syl. ¶ 1, 301 P.3d 698 (2013). They may do so after receiving what is called a detainer—a document the State files with the prison to notify a person that he or she is wanted for pending criminal charges. *State v. Hargrove*, 273 Kan. 314, Syl. ¶ 3, 45 P.3d 376 (2002). After receiving a detainer from the State, the warden must promptly notify the prisoner in writing of the "source and nature" of the pending intrastate charges. K.S.A. 2019 Supp. 22-4301(b). The inmate may then file a written request for final disposition of the charges. K.S.A. 2019 Supp. 22-4301(a). When the State receives that request, it has 180 days (subject to some exceptions not relevant here) to bring the defendant to trial. See K.S.A. 2019 Supp. 22-4303(b). Otherwise, the district court loses jurisdiction over the untried offense and must dismiss the case with prejudice. K.S.A. 2019 Supp. 22-4303(b)(4).

Here, the State contends that Ordway waived a constitutional speedy trial claim by not complying with the UMDDA's requirement that he file a disposition request. Because a detainer was filed in May 2011 notifying Ordway of the charges, the State argues that he had a duty under the UMDDA to file a written request for disposition of those charges. By not doing so, the State says that Ordway waived any constitutional speedy trial claim.

The State cites two cases to support its argument—*State v. Calderon*, 233 Kan. 87, 661 P.2d 781 (1983), and *State v. Brooks*, 206 Kan. 418, 479 P.2d 893 (1971). Neither case supports the State's position. *Brooks* was decided one year before *Barker*, the seminal case on the scope of the Sixth Amendment speedy trial right. And both *Calderon* and *Brooks* involved how noncompliance with the UMDDA effects a speedy trial claim under the Kansas Constitution, not the Sixth Amendment. *Calderon*, 233 Kan. at 96; *Brooks*, 206 Kan. 418, Syl. ¶ 2. Indeed, the *Calderon* court considered the defendant's

6

compliance with the UMDDA as evidence relevant to one of the several factors from *Barker*, something it would not have done if UMDDA noncompliance barred a Sixth Amendment claim. *Calderon*, 233 Kan. at 95-96.

A case on a similar statute drives this point home. That case involved the interstate equivalent of the UMDDA, the Interstate Agreement on Detainers Act (IADA), K.S.A. 22-4401 et seq. The IADA allows inmates imprisoned in other states or in federal prisons to request the disposition of charges pending against them in Kansas. *State v. Vaughn*, 254 Kan. 191, 194-95, 865 P.2d 207 (1993). In *Vaughn*, the Kansas Supreme Court held that noncompliance with the IADA's procedure for requesting a disposition of detainer did not waive a Sixth Amendment speedy trial claim. 254 Kan. 191, Syl. ¶ 1.

*Vaughn* is instructive because the IADA and the UMDDA are parallel laws, so precedent interpreting one act applies to the other. *Sweat v. Darr*, 235 Kan. 570, Syl. ¶ 4, 684 P.2d 347 (1984). As with the IADA, noncompliance with the UMDDA's disposition requirement does not waive the Sixth Amendment speedy trial right. Instead, noncompliance is one fact that courts should consider in applying the *Barker* factors. *Vaughn*, 254 Kan. at 195-96. We will now apply those factors to Ordway's case.

*Length of delay*

The first *Barker* factor is the length of delay. This factor is a threshold trigger for a Sixth Amendment speedy trial claim. If the defendant cannot show a presumptively prejudicial period of delay, then there is no need to consider the other factors. No bright-line rule exists for how much delay is presumptively prejudicial; instead, courts consider the reasonableness of the delay given the complexity of the issues in each case. *Barker*, 407 U.S. at 530-31; *Owens*, 310 Kan. at 872-73. The length of delay is measured from the date on which the Sixth Amendment right attached—the earlier of the indictment or

7

arrest—to the date of trial or dismissal. See *State v. Fitch*, 249 Kan. 562, 564, 819 P.2d 1225 (1991); 5 LaFave, Israel, King & Kerr, Criminal Procedure § 18.2(b) (4th ed. 2019).

The length of delay here was just over 8 years; about 100 months. The State filed the complaint on March 1, 2011, and the district court dismissed it on June 26, 2019. At the dismissal hearing, the prosecutor acknowledged that this factor favored Ordway stating, "I agree the delay is great in this case." The State's appellate brief likewise concedes this factor, stating only that "the delay is admittedly long." Because the State does not dispute the first factor, the length of delay was presumptive prejudicial and this court must consider the other *Barker* factors.

*Reasons for delay*

The second *Barker* factor is the reasons for delay. *Barker* divides the potential reasons the State could offer to explain the delay into three categories, each receiving a different weight in the balancing analysis. First, there are deliberate delays intended to undermine the defendant's defense, which weigh heavily against the State. Second, there are neutral reasons like negligence or clogged courts, which still weigh against the State but less heavily so. Third, there are valid reasons, which weigh in the State's favor and justify appropriate delay. *Barker*, 407 U.S. at 531; *Owens*, 310 Kan. at 875-76.

Here, the State offered into evidence at the hearing on the motion to dismiss State's Exhibit No. 1, the detainer the KDOC tried to serve on Ordway on May 11, 2011. Ordway lodged no objection to the admission of the exhibit. Although Ordway refused to sign the detainer, the exhibit shows that he "received [a] copy." The district court referred to the detainer when it ruled on the motion to dismiss which shows that the court considered the exhibit as part of the evidence presented on the motion. The district court agreed with the prosecutor that the detainer "places the obligation on the defendant if he

8

wants to get the matter resolved." Still, the district court continued with its analysis and found that Ordway's constitutional speedy trial rights had been violated.

The detainer that Ordway received in May 2011 provides a valid reason for the delay in the prosecution of the charges. Ordway could have requested a trial on the Reno County charges in May 2011, and the State would have been required to bring him to trial within 180 days of the request. See K.S.A. 22-4303. Ordway's noncompliance with the provisions of the UMDDA does not constitute a waiver of his Sixth Amendment speedy-trial claim, but it is one fact that courts should consider in applying the *Barker* factors. *Vaughn*, 254 Kan. at 195-96. Ordway's failure to request disposition of the charges after receiving the detainer weighs in the State's favor on the motion to dismiss.

*Ordway's assertion of the right*

The third *Barker* factor is the defendant's assertion of the speedy trial right, which courts assign "strong evidentiary weight." 407 U.S. at 531. But just how strong it weighs depends on the force and frequency with which the defendant asserts the right. 407 U.S. at 531-32. And, of course, nonassertion of the right makes it difficult for the defendant to prove a speedy trial violation. 407 U.S. at 532.

Again, the evidence shows that Ordway knew about the Reno County charges in May 2011, but he did not assert his right to a trial until January 2019. The district court transported Ordway for his first appearance on February 6, 2019. The court held a preliminary hearing on April 11, 2019, before granting Ordway's motion to dismiss on June 17, 2019. Under these facts, Ordway's failure to assert his speedy trial right until January 2019 weighs strongly in the State's favor on the motion to dismiss.

*Prejudice to the defendant*

The last speedy trial factor is prejudice to the defendant from the delayed prosecution. Under *Barker*, prejudice comes in three forms that reflect the interests the speedy trial right protects:  (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting possible impairment of the defense. 407 U.S. at 532. Of the three, the last is the "most serious" because the inability to adequately prepare a defense "skews the fairness of the entire system." 407 U.S. at 532. Defense impairment arises if witnesses died or disappeared during the delay, or if they can no longer accurately recall certain events. 407 U.S. at 532.

The district court relied most heavily on prejudice, finding that Ordway had trouble obtaining witnesses while incarcerated and remembering events from 11 years ago. Rather than dispute Ordway's prejudice evidence, the State argues that it was also prejudiced because it had to dismiss one of the charges at the preliminary hearing when one officer that Ordway allegedly assaulted could not remember the incident. But the State cites no authority for the proposition that Ordway somehow cannot show prejudice on the remaining charge simply because the State dropped the other one.

Ordway testified that he could no longer remember the first name of a person named Washington who prison officials also disciplined for the same incident. But more importantly, Ordway did remember the other inmate's last name and presumably that inmate could be located and subpoenaed if there is any written incident report of the battery for which Ordway is charged. Ordway also vaguely testified that he could not remember the names of the 10 to 15 other inmates who saw the incident. But this lack of memory cuts both ways because these other inmates, if available, may have testified in favor of the State and against Ordway. We find that Ordway established some prejudice caused by the delay in his prosecution, but we do not find that this factor weighs in Ordway's favor nearly as much as the district court so found.

10

We apply de novo review to the district court's ultimate legal conclusion that Ordway's Sixth Amendment right to a speedy trial was violated under these facts, and we reach a different conclusion than the district court. We find that the main reason for the delay in prosecution was Ordway's failure to request a trial after he received notice of the charges in 2011. Instead, Ordway did not assert his speedy trial right until January 2019, and the State commenced proceedings in district court a few weeks later. We conclude that the reason for the delay and Ordway's failure to assert his speedy trial right weigh in favor of the State on the motion to dismiss, and these factors overcome the fact that the 100-month delay was presumptively prejudicial. Although Ordway presented some evidence that he was harmed by the delay, it was Ordway's own inaction that caused the delay in the first place. Ordway's noncompliance with the provisions of the UMDDA does not constitute a waiver of his Sixth Amendment speedy-trial claim, but it is one fact that courts should consider in applying the *Barker* factors. *Vaughn*, 254 Kan. at 195-96. Here, the district court essentially ignored this fact in reaching its conclusion that Ordway's constitutional speedy trial rights were violated.

Weighing the *Barker* factors and applying them to the circumstances of Ordway's case, we conclude that the State did not violate his Sixth Amendment right to a speedy trial. As a result, we reverse the district court's dismissal of the criminal charge against Ordway and remand for further proceedings.

Reversed and remanded.

11