No. 77,110

STATE OF KANSAS, *Appellee*, v. GUADALOUPE ZAMORA, *Appellant.*
(949 P.2d 621)

Opinion filed December 12, 1997.

*Ezra J. Ginzburg*, assistant appellate defender, argued the cause, and *Alice A. Craig*, assistant appellate defender, and *Steven R. Zinn*, deputy appellate defender, were on the brief for appellant.

*Lisa A. Beran*, of Law Office of Lisa A. Beran, of Great Bend, argued the cause, and *Carla J. Stovall*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Guadaloupe Zamora appeals his 1995 jury convictions of two counts of aggravated criminal sodomy and one count of aggravated kidnapping, resulting in a controlling sentence of life

imprisonment. The charges stemmed from the molestation of an 8-year-old boy in 1991. Our jurisdiction is pursuant to K.S.A. 22-3601(b)(1).

The issues on appeal relate to claimed trial errors of allowing preliminary hearing testimony to be read into evidence after finding the witness was unavailable and refusing to grant a mistrial after an impaneled juror stated that her adopted daughter might be related to the victim. This requires only a brief summary of the facts presented at trial.

The victim, A.J., was taken fishing by a neighbor, Alfredo (David) Chavez, with 16-year-old Jeremy Kline (the unavailable witness) and 33-year-old Zamora accompanying them.

Zamora was intoxicated. A.J. testified Zamora tried to kiss him before they left. A.J. and Kline testified that Zamora touched A.J.'s thighs on the way to the lake. A.J. and Kline both testified that at the lake, Zamora pressed himself against A.J.'s buttocks, although both were clothed.

A.J. testified that after returning to Chavez' home around dusk, he was anally sodomized by Zamora, then carried behind a concrete plant and again anally and orally sodomized by Zamora. A.J. escaped, ran home, went to a convenience store, and called 911.

The police had A.J. medically examined, but no medical proof that A.J. had been sodomized was found. After Chavez and Kline were interviewed, Zamora was found and questioned through a translator, who advised Zamora of his *Miranda* rights in Spanish. Zamora eventually said he was "gay" and "that he likes to suck little boys because it makes him feel good," although he could not remember what he had done to A.J.

A.J., Kline, and Chavez all testified at the preliminary hearing. Zamora was bound over for trial, but after being released on bond, he fled to Mexico. He was tried 4 years later after being apprehended in Texas. By this time, the State was unable to ascertain the whereabouts of Kline and sought to admit his preliminary hearing testimony at trial. The admission of this testimony is the first issue we consider.

Zamora claims the State did not attempt to locate Kline with due diligence and failed to demonstrate his testimony was sufficiently reliable.

K.S.A. 60-460(c)(2) permits the use of preliminary hearing testimony in a trial of the same action if the declarant is unavailable at the trial and the adverse party had the right and opportunity to adequately cross-examine at the preliminary hearing. Although this section states its provisions "shall not apply in criminal actions if it denies to the accused the right to meet the witness face to face," we have held the Sixth Amendment right of confrontation is satisfied if the accused was once confronted by the witness at any stage of the proceedings in the same case and has had an opportunity of cross-examination. *State v. Ruebke,* 240 Kan. 493, 517, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987).

A witness is deemed unavailable pursuant to K.S.A. 60-459(g) when the witness is "(4) absent beyond the jurisdiction of the court to compel appearance by its process, or (5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts."

The standard for determining if a witness is unavailable is the "reasonable diligence rule," *State v. Vargas,* 260 Kan. 791, 799, 926 P.2d 223 (1996), requiring a " 'good faith effort to obtain the witness' presence at trial.' " (Quoting *State v. Watie, Heard & Heard,* 223 Kan. 337, 340, 574 P.2d 1368 [1978]). "The question of availability turns on the totality of the facts and circumstances of each case." *Vargas,* 260 Kan. at 799.

A trial court's determination that a witness is unavailable to testify will not be disturbed on appeal unless an abuse of discretion is shown. *State v. Cook,* 259 Kan. 370, 375, 913 P.2d 97 (1996). We have said that a trial court abuses its discretion only when judicial action is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the trial court's view. *State v. Baacke,* 261 Kan. 422, 427, 932 P.2d 396 (1997).

The first and most important fact in this case is that Zamora failed to honor his bond and fled to Mexico, where he remained from October 1991 until he was located in Texas and extradited to Kansas in March 1995. The case was set for trial in May 1995, was rescheduled several times, and was finally tried in October 1995.

Each time the case was set for trial, new subpoenas were issued for each of the State's witnesses, with the exception of Kline, as the State was unable to discover his whereabouts. In August 1995, the State moved to admit Kline's preliminary hearing testimony pursuant to K.S.A. 60-460(c).

Prior to selecting the jury, the court addressed the State's motion. The county attorney described the efforts that had been taken to locate Kline. Zamora opposed this motion, arguing that after the preliminary hearing, his attorney had moved to question Kline's competency upon learning that Kline had possibly "gone off the deep end and been sent to Larned." Zamora also asserted that the State had not exercised due diligence in its attempts to locate Kline.

The trial court initially denied the motion on the grounds that subsequent information had arisen which placed the competency of Kline in question, so the nature and scope of cross-examination had substantially changed. The court did find, however, that the State had exercised due diligence in its attempt to locate Kline.

The following day, the court readdressed the issue of whether to admit Kline's preliminary hearing testimony. The State informed the court it had again contacted Magistrate Judge Lee Nusser and learned the Stafford County care and treatment case had concluded and that Kline did not have a mental illness. The State showed Kline had been adjudicated for misdemeanor theft of services, and during cross-examination at the preliminary hearing, Kline admitted he had been served with a warrant for this crime. The State further pointed out that although Judge Nusser had been familiar with Kline from the Stafford County cases, he had been the presiding judge at the preliminary hearing and made no effort to question Kline's competency or to disqualify him from testifying.

Zamora again questioned whether the State had exercised due diligence in trying to locate Kline. The court decided to allow the State to present evidence of its efforts, as required by *State v. Mitchell*, 18 Kan. App. 2d 530, 855 P.2d 989 (1993). Linda Eggers, an employee of the county attorney's office, testified she was given the task of locating Kline prior to trial when the case was scheduled to be tried in August.

Eggers first called Kline's phone number, but the number was no longer in service, and she could find no other listings. Eggers then called Dell Heyden, an employee of the Larned State Hospital Youth Center, who confirmed that Kline had been there, but the Youth Center refused to release further information on the grounds of confidentiality. Eggers also spoke with Judge Nusser, who advised that Kline had been sent to the Topeka Youth Center but had been released and had reportedly gone to California. Judge Nusser also told Eggers that Kline's parents lived in Oklahoma and that the Department of Social and Rehabilitation Services (SRS) in St. John might have relevant information. Kline had long been gone from the last known address the SRS in St. John possessed. Eggers also called the sheriff's office to see if it could locate Kline, but to no avail.

Eggers made no attempt to locate Kline's parents in Oklahoma, and no subpoenas were issued to the Youth Centers to compel information regarding Kline. Eggers did not perform a postal check, nor did she attempt to check social security records or the National Crime Information Computer (NCIC). No subpoena was issued for Kline.

Next, Scott Ekberg, the county attorney's victim witness coordinator, testified he ran a check on the NCIC immediately prior to this hearing. He found no record of Kline in the interstate identification index.

Libbie Moore, the county attorney, told the court that as of the prior day, Judge Nusser reported he had last heard that Kline had been sent to the Apache Adobe Youth Center in Arizona. Moore also informed the court that Chavez had been asked if he knew where Kline was but said he had not seen Kline for a long time.

Following the testimony and arguments on the motion, the court reversed its prior ruling and permitted Kline's preliminary hearing testimony to be read into evidence. Zamora later moved to admit Kline's two juvenile case files for misdemeanor theft of services and his care and treatment file. The court permitted the jury to receive the complaints and journal entries of adjudication, but not the complete files or the care and treatment file.

We have addressed the issue of witness unavailability on numerous occasions, most recently in *Cook*, 259 Kan. at 372-84. Our opinion compared the factual situation in *Cook* to several of our prior cases before deciding the trial court had not abused its discretion in finding the witness to be unavailable. The witness in *Cook* was the key witness for the State, had moved to California for his safety, and had refused to provide an address and phone number to the State. However, as the witness had previously cooperated, the State had no reason to expect that he would not appear until shortly before trial. When the State realized the witness would not appear unless he received travel expenses up front, the State finally obtained and wired the money, but by then was unsuccessful in locating the witness. Less than a year and a half had passed between the criminal act and Cook's trial.

We found the factual situation in *Cook* was similar to that of *State v. Vaughn*, 254 Kan. 191, 865 P.2d 207 (1993), where we reversed the trial court's refusal to find that the defendant's witness was unavailable. Prior to trial, in *Vaughn*, defense counsel had spoken to the previously cooperative witness several times, but the witness refused to provide an address or phone number. Counsel expected the witness to appear until the weekend before trial, when the witness failed to appear as promised at a meeting. Counsel checked with the witness' parole officer and found the witness had not been reporting and the officer had no current address or phone number. Counsel also contacted the witness' mother and friends. Vaughn was not brought to trial until over 9 years had passed since the commission of the crime.

We also favorably compared the facts in *Cook* to *State v. Bey*, 217 Kan. 251, 535 P.2d 881 (1975), where we affirmed the trial court's determination that a State witness was unavailable. The witness in *Bey* verified he would appear at trial and gave the State his address in Marshall, Missouri. When the State discovered that its subpoena was not served, it contacted the Marshall police and asked them to locate the witness. Finding that the witness had moved to Fair Play, Missouri, the State attempted to locate him there and had a sheriff's deputy leave a note at his address. The State also attempted to find him through the witness' friends,

brother, and nephew. Only 4 months had passed between the criminal act and the trial.

In *Cook,* we distinguished the cases of *State v. Kirk,* 211 Kan. 165, 505 P.2d 619 (1973), and *State v. Mims,* 222 Kan. 335, 564 P.2d 531 (1977), where witnesses were not found to be unavailable. In *Kirk,* a 4-3 decision, we held the trial court abused its discretion in finding the State had exercised due diligence to secure the presence of the witness at trial. 211 Kan. 165, Syl. ¶ 2. The *Kirk* opinion focused heavily on the actions the State had failed to take in locating the witness. Although knowing the case was to be retried due to a mistrial, the State assisted the witness in leaving the state but did not require a material witness bond or an out of state address. Nor did the State attempt to compel the witness' attorney to provide his address. About 7 months passed from the commission of the criminal act and the second trial.

In *Mims,* 222 Kan. at 338, we ruled the trial court did not abuse its discretion in holding the defendant had failed to use reasonable diligence in securing the witness' attendance. After a mistrial was declared, Mims had left messages for a witness stating that he wanted the witness to testify in the second trial. Mims believed the witness would appear and did not issue a subpoena. The second trial appears to have been held within a year and a half of the criminal act.

The only other case the parties have heavily addressed as having a bearing on this issue is *Mitchell,* 18 Kan. App. 2d 530. *Mitchell* held that statements of counsel were not evidence to support a finding of unavailability. Additionally, *Mitchell* determined that merely issuing a subpoena and stating the police "have not seen" the witness did not show reasonable diligence in attempting to ascertain the whereabouts of an absent witness. 18 Kan. App. 2d at 535.

After examining these cases and considering the facts of this case, we hold the trial court did not abuse its discretion in finding Kline to be unavailable. With the exception of *Vaughn,* where the defendant was the proponent of the transcript evidence, there was no lengthy delay in any of these cases between the preliminary

hearing and the trial, much less one occasioned by a defendant's abscondence from the jurisdiction.

Additionally, unlike the case of *Kirk*, the State here did not assist Kline in leaving the state. Rather, after Zamora fled, the State justifiably had no reason to believe the case would ever go to trial and simply lost contact with one of its witnesses. Under these circumstances, we do not find it was unreasonable for the State not to require material witness bonds on all its witnesses.

As in many of the discussed cases, the State did not possess an address for Kline. However, this was primarily due to the length of time that had passed since the preliminary hearing, rather than the objectionable failure to obtain an address as in *Kirk*, where the State had knowledge that the case would be retried in the near future. In *Cook*, we recognized there are instances where the State need not require the witness to provide an address, although this was partly because the witness regularly checked in and had previously cooperated. In the present case, however, placing a requirement upon Kline to check in with the State for the indefinite future would not have been realistic.

If we focus, as we did in *Kirk*, upon what the State failed to do to ascertain Kline's whereabouts, arguments could be made that are adverse to the trial court's ruling. However, we consider this issue under an abuse of discretion standard of review, not as a trial court deciding the issue in the first instance.

The efforts the State took to locate Kline are comparable with the actions taken in *Bey* and *Vaughn*, where we deemed the witnesses to be unavailable. Last known addresses were checked, a judge familiar with Kline was contacted, agencies dealing with him were questioned, and a prior acquaintance was queried. The State was led to believe that Kline had moved out of state to California or Arizona, but it should not have suspected that Kline, who would then have been 20 years old, was still being held in the Apache Adobe Youth Center. Issuance of a subpoena would have been a useless act under these circumstances.

In light of the actions the State did take to find Kline and the reason for the delay in the trial, we cannot find that no reasonable

person could agree with the trial court's ruling. Thus, the trial court's finding of unavailability must stand.

Zamora also alleges Kline's preliminary hearing testimony was not proven to be sufficiently reliable so that its admission would satisfy the requirements of the Sixth Amendment Confrontation Clause. Due to Kline's subsequent commitment to several mental facilities, Zamora complains he was unable to cross-examine Kline about his competency at the time of the hearing.

In *State v. Thrasher*, 233 Kan. 1016, 1018, 666 P.2d 722 (1983), we pointed out that witnesses are presumed to be competent and the burden of establishing incompetency rests on the challenger. Zamora presented no evidence that Kline had been adjudged incompetent, and the record indicates a contrary finding had been made. Nothing in the record on appeal supports the inference that Kline was under the influence of any medications when he testified or subsequently received any mental treatment.

Kline's testimony was consistent with that of the other witnesses and bore no outward markings of unreliability. Despite being sequestered prior to taking the stand, Kline corroborated A.J. regarding several key facts. Kline appeared to understand questions asked of him and responded appropriately. Nothing in Kline's testimony reveals him to be an incompetent witness. Additionally, Zamora was permitted to impeach Kline's testimony through the admission of his juvenile adjudication records.

We hold Zamora has failed to cite any evidence in the record to establish that Kline's testimony is unreliable. While Zamora may not have had the opportunity to question Kline about his subsequent mental health, from the facts in the record, this deficiency does not render Kline's testimony so unreliable as to constitute reversible error.

In cases of necessity, the right of confrontation is satisfied if the accused once confronted the witness in any stage of the same proceedings and had the opportunity of cross-examination. *Cook*, 259 Kan. at 384. Here, Kline's unavailability was due in large part to Zamora's own actions, and he should not benefit thereby. We find no error on this issue.

On the second day of the trial, a juror approached the bailiff and informed her she believed her adopted daughter was the biological cousin of A.J. The juror was questioned in the judge's chambers in the presence of both the State and Zamora. She told the judge that the relationship had dawned upon her while considering A.J.'s name. She said she did not recognize A.J. or even the name when first asked. The juror stated she did not know the relationship to be true, although she suspected it was. The juror thought she may have met A.J. once a long time ago when they were in the same room, but she possessed no other knowledge of him. The juror claimed the possible relationship would not affect her decision-making ability, but she would have been bothered had she not brought the matter to the attention of the court.

The trial court was satisfied the possible relationship would have no effect on the juror's ability to serve as a fair and impartial juror and denied Zamora's motion for a mistrial.

We have held a trial court has discretion to order a mistrial if false statements of a juror during voir dire prevent a fair trial. The failure to grant a mistrial due to such misstatements will not constitute reversible error unless an abuse of discretion is shown. *Mims*, 222 Kan. at 339 (quoting *State v. Collins*, 215 Kan. 789, 790-91, 528 P.2d 1221 [1974]). It is also within a trial court's discretion to declare a mistrial when it is shown that a juror becomes so prejudiced during the trial that he or she cannot serve as a fair and impartial juror. *State v. Bennett*, 222 Kan. 358, 359-60, 564 P.2d 540 (1977).

Zamora has failed to demonstrate the trial court abused its discretion in refusing to declare a mistrial. This juror was not related by consanguinity to A.J., in which the juror could have been challenged for cause pursuant to K.S.A. 22-3410(2)(a), nor was the juror even certain of the relationship between her adopted daughter and A.J. Additionally, Zamora made no showing that the juror's state of mind was such there was doubt she could act impartially. On the contrary, this juror repeatedly asserted she could continue to serve as a fair and impartial juror and that she believed a person to be innocent until proven guilty. As in *Mims*, 222 Kan. at 339, the failure of this juror to recall a possible relationship with A.J.

until after his testimony belies the notion that the relationship was prejudicial.

We reject Zamora's contention that it was an abuse of discretion for the trial court to refuse to grant a mistrial.

Affirmed.

LOCKETT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned.