(998 P.2d 524)
No. 80,228

STATE OF KANSAS, *Appellee*, v. ROSCOE HARRIS, *Appellant*.

Opinion filed February 18, 2000.

*Janine Cox*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Jerome A. Gorman*, assistant district attorney, *Nick Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before JUSTICE DAVIS, presiding, DAVID J. KING, District Judge, assigned, and PHILIP C. VIEUX, District Judge, assigned.

VIEUX, J.: In January 1997, a number of persons gathered at a private home for a birthday party. One of the attendants of the party showed up with six to eight of his friends. Included among those friends were the defendant Roscoe Harris and the victim Kevin Garrett.

While at the party, the killing of Joey Dowdy, a cousin of Craig Roland, whose birthday was being celebrated, was a topic of discussion. Roland became very emotional when he spoke of Dowdy's death. Another cousin, LaRonda, who attended the party, testified that she had given a previous statement to the police that Roland stated all he wanted for his birthday was for Garrett to be dead. Roland testified, however, that he did not tell anyone that he thought Garrett killed Dowdy; rather, he thought that another named individual was the killer. LaRonda testified that she saw Harris and Garrett leave together in Garrett's white 1984 Buick Regal that evening.

On the same night as the party, Officer Gary Graniewski was eastbound on Grandview Boulevard when he saw a vehicle setting in the roadway on 12th street, just north of Grandview. The car was parked away from the curb with its motor running and the door open. He saw an individual run from a residence and get into

the car. The vehicle went north on 12th street at a high rate of speed. The officer followed the car.

The car made a square through the streets in the area and finally stopped near an alley one block east of where the car was first observed by the officer. As the officer pulled in behind the vehicle, the driver got out of the car and ran back, cut between the vehicles, and ran westbound into the alleyway. Officer Graniewski was then able to identify the driver as Harris.

Harris refused to stop running when ordered. Graniewski put out Harris' description and location to the radio dispatcher. Officers Joyce, Cross, and Golden had heard of the matter and saw a person matching the description. The officers observed the individual run into a nearby residence. The officers secured the residence until more officers could arrive.

At the alley where Harris had left his car, Officer Golden entered the alley from the side opposite of Officer Graniewski. Officer Golden found the body of Garrett lying face down in the alley in a pool of blood. The autopsy revealed that Garrett had five bullet wounds in his body. After also observing the body, Officer Graniewski checked the inside of the vehicle previously abandoned by Harris and found a large amount of wet blood.

Officer Graniewski went into the residence secured by Officers Joyce and Cross and located Harris, who was no longer wearing the black jacket he wore when he ran from Officer Graniewski. Officer Graniewski did, however, find the jacket lying along the far wall in the living room. There were a pair of gray gloves in the pocket of the coat and a billfold which had a social security card in it with the name of Roscoe Harris. The coat and gloves had blood on them. Genetic testing revealed that the bloodstains on the jacket and gloves were consistent with Garrett's blood.

Harris was charged with second-degree murder and at trial was found guilty of the lesser included offense of voluntary manslaughter upon a sudden quarrel or in the heat of passion. K.S.A. 21-3403(a). Harris appeals.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution,

the appellate court is convinced that a rational fact finder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

The primary focus of Harris' appeal in this case is upon the element of the crime of voluntary manslaughter which requires that the killing be done "upon a sudden quarrel or in the heat of passion." The sudden quarrel or heat of passion necessary must have come about because of legally sufficient provocation. *State v. Cheeks*, 258 Kan. 581, 590, 908 P.2d 175 (1975). The test for sufficient provocation is objective, and the provocation must be sufficient to cause an ordinary person to lose control. *State v. Bell*, 266 Kan. 896, 918, 975 P.2d 239 (1999). The State argues that the presence of Harris at the emotionally charged birthday party and the bloodstains on his clothes provided sufficient evidence of sudden quarrel or heat of passion brought about by sufficient provocation.

The presence of blood on Harris' clothing is the only proof of Harris either being present when Garrett was killed or there immediately afterward. There is nothing particularly indicative of a sudden quarrel or heat of passion in bloodstains on clothing. And, mere presence has never been proof of criminal activity in and of itself.

Further, the statements attributed to Roland, if he made them at all, would not have been sufficient provocation. Words alone do not constitute a "sufficient provocation." *State v. McClanahan*, 254 Kan. 104, 114, 865 P.2d 1021 (1993). It must also be remembered that Roland's statements indicated a conflict that Roland had with Garrett, not a conflict between Harris and Garrett. A theory of a sudden quarrel between the victim and a third party will not support a conviction of voluntary manslaughter. *State v. Clark*, 263 Kan. 370, 374, 949 P.2d 1099 (1997).

Additionally, the provocation must have caused Harris to act without sufficient time for reflection. See *State v. Follin*, 263 Kan. 28, 35, 947 P.2d 8 (1997). LaRonda's testimony indicated that Harris and Garrett left the party together; however, there was no evidence of any heightened emotional state between the two. The

evidence was not sufficient to show provocation sufficient to cause an ordinary person to lose control.

Clearly, the trial court erred in instructing the jury as to voluntary manslaughter, as that crime was not supported by the evidence. Generally, a finding that a defendant was convicted on a charge for which there was insufficient evidence would require reversal of the defendant's conviction. However, the interplay between the crimes of second-degree murder and voluntary manslaughter creates a unique situation in this case.

Harris was charged with second-degree murder under K.S.A. 21-3402(a), which requires the intentional killing of a human. He was convicted of voluntary manslaughter under K.S.A. 21-3403(a), which is the intentional killing of a human being with the mitigating circumstance of the crime occurring "[u]pon a sudden quarrel or in the heat of passion." As stated above, there was no evidence from which a jury could have found the mitigating circumstance to exist. However, in its finding of voluntary manslaughter, the jury clearly found that Harris intentionally killed Garrett.

A number of jurisdictions have determined that where a defendant is charged with murder and is convicted of the lesser included offense of manslaughter, the defendant's conviction will stand notwithstanding the fact that there was no evidence to support the jury's finding of provocation, as long as the evidence was sufficient to convict the defendant of the greater crime of murder. See *Patrick v. State*, 245 Ark. 923, 924, 436 S.W. 2d 275 (1969); *People v. Lee*, 20 Cal. 4th 47, 63-65, 82 Cal. Rptr. 2d 625, 971 P.2d 1001 (1999); *State v. Ellis*, 70 Idaho 417, 420, 219 P.2d 953 (1950); *O'Connor v. State*, 272 Ind. 460, 465-67, 399 N.E. 2d 364 (1980); *State v. Heald*, 292 A.2d 200, 201 (Me. 1972); *People v. Buck*, 197 Mich. App. 404, 422-23, 496 N.W. 2d 321 (1992); *Hubbard v. State*, 437 So. 2d 430, 438-39 (Miss. 1983); *Abel v. State*, 507 P.2d 569, 572 (Okla. Crim. 1973); *Commonwealth v. Penn*, 444 Pa. 526, 528-29, 282 A.2d 233 (1971); *State v. Perry*, 78 S.C. 184, 185, 59 S.E. 851 (1907). But see *State v. Padilla*, 104 N.M. 446, 449, 722 P.2d 697 (Ct. App. 1986) (refusing to adopt this rule); *State v. Ray*, 299 N.C. 151, 261 S.E. 2d 789 (1980) (holding that in order for the conviction to stand, the evidence of the greater charge must

be overwhelming). See Annot., *Propriety of Manslaughter Conviction in Prosecution for Murder, Absent Proof of Necessary Elements of Manslaughter*, 19 A.L.R. 4th 861. This is because such an error is actually favorable to the defendant, in that the jury, by finding him guilty of voluntary manslaughter, has found the elements necessary for murder but has decided to convict on a lesser charge. See *People v. Lee*, 20 Cal. 4th at 65-66 and cases cited therein.

Kansas has not explicitly addressed this situation. However, in *State v. Bradford*, 219 Kan. 336, 344, 548 P.2d 812 (1976), our Supreme Court noted:

" '. . . [T]he rule supported by most of the courts is that if the evidence demands or warrants a conviction of a higher degree of homicide than that found by the verdict . . . the defendant is not entitled to a reversal or a new trial on the ground that the court instructed on the lower degree of homicide as to which there is no evidence, the theory being that he is not prejudiced thereby and cannot complain. . . .' [Citation omitted.]"

Such a conviction does not violate the rule of *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970), requiring that a jury must find proof beyond a reasonable doubt of every element of the crime. In finding manslaughter, the jury has necessarily found all the facts necessary to convict the defendant of murder. 20 Cal. 4th at 66.

We agree with this rule and hold that where a defendant is charged with second-degree intentional murder and convicted of voluntary manslaughter based on sudden quarrel or heat of passion, the conviction may stand even absent evidence of sudden quarrel or heat of passion, as long as the evidence was sufficient to convict the defendant of second-degree intentional murder. The sole distinction between intentional second-degree murder and voluntary manslaughter in this case was the presence of mitigating circumstances. The jury, by its conviction for voluntary manslaughter, clearly found that Harris had intentionally killed Garrett. However, the jury, without evidence, decided to find mitigating circumstances. Such a result is favorable to Harris and, thus, he may not complain on appeal that his conviction for voluntary manslaughter was based on insufficient evidence as long as sufficient evidence

existed to convict him of the greater offense of second-degree murder.

This brings us to the question of whether the evidence was sufficient to allow a reasonable jury to convict Harris of second-degree murder. It is true that the evidence connecting the defendant to the murder was circumstantial. However, a conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Cravatt*, 267 Kan. 314, 328, 979 P.2d 679 (1999). The evidence in this case was that Harris and Garrett left together in a white Buick Regal. Later, Harris was seen running from a residence and getting into the vehicle. Harris then drove the vehicle at a high rate of speed to an alley. When police stopped to investigate, Harris ran from the car, ignoring orders to stop. Garrett's body with five bullet wounds was discovered in the alley. There was a large amount of wet blood inside of the vehicle. Harris's coat and gloves had blood on them consistent with that of Garrett's blood type. Under these facts, a rational factfinder could have found the defendant guilty beyond a reasonable doubt of second-degree intentional murder. Therefore, the defendant's conviction of voluntary manslaughter may not be overturned even in the absence of evidence of a sudden quarrel or heat of passion.

Harris also argues that the trial court committed error in denying his motion for judgment of acquittal at the conclusion of the State's evidence.

"In ruling on a motion for a judgment of acquittal, if a trial judge concludes from the evidence that a reasonable mind might fairly decide a defendant is guilty beyond a reasonable doubt, the motion must be denied and the case must go to the jury. On appeal, the reviewing court must decide whether a rational factfinder could have found the accused guilty without a reasonable doubt. [Citation omitted.]" *State v. Valdez*, 266 Kan. 774, 784, 977 P.2d 242 (1999).

As stated above, the evidence was sufficient for the jury to have found the defendant guilty of second-degree murder. Therefore, the trial court did not err in denying Harris's motion for acquittal.

The defendant's final argument is that the trial court erred when it found that Laron Berry was unavailable as a witness and permitted a tape of his preliminary hearing transcript to be used as evidence. K.S.A. 1998 Supp. 60-460(c)(2) permits the use of pre-

liminary hearing testimony in a trial of the same action if the declarant is unavailable at the trial and the adverse party had the right and opportunity to adequately cross-examine at the preliminary hearing. *State v. Zamora*, 263 Kan. 340, 342, 949 P.2d 621 (1997). The Sixth Amendment right of confrontation is satisfied if the accused was once confronted by the witness at any stage of the proceedings in the same case and has had the opportunity of cross-examination. *Zamora*, 263 Kan. at 342; *State v. Ruebke*, 240 Kan. 493, 517, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987).

A witness is deemed unavailable pursuant to K.S.A. 60-459(g)(5) when the witness is absent from the place of hearing because the proponent of his or her statement does not know and, with diligence, has been unable to ascertain his or her whereabouts. The standard for determining whether a witness is unavailable is whether there has been a good faith effort to obtain the witness' presence at trial. *Zamora*, 263 Kan. at 342. Such a question turns on the totality of the facts and circumstances of each case, and the trial court's determination that a witness is unavailable to testify will not be disturbed on appeal absent an abuse of discretion. 263 Kan. at 342.

In the case at hand, investigator Tom Tomasic testified about his attempts to locate Berry. Tomasic testified that after the subpoena was issued on May 13, 1997, he went to Berry's residence on two or three occasions. Tomasic spoke to Berry's landlord who informed him that he was trying to evict Berry. Tomasic also went to the home of Berry's mother several times. Because Berry was under court supervision in another matter, Tomasic was able to speak to Berry on the day before trial but was unable to convince Berry to testify. Berry was not there when Tomasic went to pick him up. Tomasic attempted to use a social security trace to locate Berry but was unsuccessful. Berry's mother said that Berry was in the hospital, but Tomasic could not find him at the three hospitals he checked. Under these circumstances, a reasonable person would agree that the State utilized due diligence in attempting to procure Berry's testimony, and the trial court did not err in determining that Berry was unavailable.

Affirmed.