(93 P.3d 725)
No. 90,018

STATE OF KANSAS, *Appellee,* v. GONZALO LARRACO, *Appellant.*

Opinion filed July 16, 2004.

*Heather Cessna,* assistant appellate defender, for appellant.

*Julie A. Funk,* assistant county attorney, *Edmond Brancart,* county attorney, and *Phill Kline,* attorney general, for appellee.

Before RULON, C.J., PIERRON and HILL, JJ.

HILL, J.: Gonzalo Larraco was tried and convicted of several felonies by a judge. A defendant has a fundamental right to a jury trial granted by constitution and by statute. In order to waive this right, a defendant must first be advised by the court of the right to a jury trial and then must personally waive this right, either in writing or in open court for the record. Because defense counsel here simply talked to the judge's secretary on the telephone and none of the requirements for properly waiving a jury trial were followed, we must reverse Larraco's convictions and order a new trial.

Furthermore, the trial court admitted the preliminary hearing testimony of a witness that the State permitted to be deported, without first holding an evidentiary hearing to examine whether the State had made reasonable efforts to assure the presence of the alien witness at trial. We deem that admission an abuse of discretion.

## FACTUAL SUMMARY

Dodge City police officers investigated a fight after receiving a call placed by Delfino Dela Rosa-Moreno on January 1, 2002. The officers went to a local motel where they found Gonzalo Larraco

with a swollen and scratched face. Larraco told officers he had been in a fight with "Hector," who was later identified as Rosa-Moreno. Police found a gun inside Larraco's motel room. Larraco was later charged with two counts of battery and one count each of aggravated burglary, aggravated assault, criminal threat, and criminal damage to property.

After the trial judge found that Rosa-Moreno was unavailable as a trial witness because of his deportation on August 7, 2002, his preliminary hearing testimony was admitted into evidence against Larraco. We will briefly review the testimony of Rosa-Moreno, Jake Gallegos, and Larraco that was presented at trial.

The preliminary hearing testimony of Rosa-Moreno admitted at trial indicated that he recognized Larraco as a thief who had stolen property from Gallegos' house. Rosa-Moreno became angry when he saw Larraco at Gallegos' house on January 1, 2002, and began to argue and fight with Larraco. Larraco threatened to get a gun and shoot Rosa-Moreno. Rosa-Moreno testified that Larraco did not return to Gallegos' house. However, Rosa-Moreno stated that he was approached by Larraco while traveling to a convenience store later that day. Larraco pointed a gun at him, saying, "I'm gonna shoot you." Rosa-Moreno told Larraco to drop the gun and to fight. Larraco responded, "No, you're gonna die." Rosa-Moreno then reported the incident to police.

Gallegos explained at trial that the house where he resided had been robbed several days before Larraco stopped by on January 1. When Rosa-Moreno recognized a personal item which had been stolen in the possession of Larraco, Rosa-Moreno and Larraco began to fight, and Gallegos broke up the fight. Gallegos said Larraco returned later that day to the house with a steel pipe, looking for Rosa-Moreno; however, Rosa-Moreno was not there. Larraco was wielding a gun when he returned the second time. Gallegos locked the front door, but Larraco kicked in the door and entered the house. Gallegos then sprayed Larraco with pepper spray. As Larraco was retreating, Gallegos threw a vacuum cleaner at Larraco's head. In the meantime, Rosa-Moreno returned to the house. Larraco stood outside the front of the house pointing the gun at Rosa-

Moreno and Gallegos alternatively. After approximately 15 minutes, Larraco left.

Larraco testified in his own behalf that he had previously lived about 2 to 3 months at the house where the incident occurred with Gallegos and Rosa-Moreno. He had moved out of the residence and into a motel the day before the fight. Larraco stated the fight broke out when he went to the residence to buy drugs. Larraco explained that Gallegos and Rosa-Moreno beat him due to a dispute over the price of drugs and because the two men believed he had stolen drugs from them the day before. He denied that he had returned later to the house with either an iron bar or a gun and also stated that he did not go to the convenience store and point a gun at Rosa-Moreno. Larraco testified that the gun recovered by the police did not belong to him.

At the close of the bench trial, the judge stated that he did not find Larraco's testimony credible and noted the differences in testimony given by Gallegos and Rosa-Moreno. Based on this evidence, the judge found Larraco guilty of aggravated burglary, aggravated assault (with a firearm), criminal threat, and criminal damage to property. Larraco was acquitted of two counts of battery. He was sentenced to a prison term of 114 months based upon a criminal history score of B. Larraco timely appealed.

## RIGHT TO JURY TRIAL NOT WAIVED

There is no more fundamental right in the United States than the right to a jury trial. A criminal defendant has both a constitutional and a statutory right to a jury trial. See U.S. Const. Amend. VI; Kan. Const. Bill of Rights §§ 5, 10; K.S.A. 22-3403(1). Moreover, "[t]he law favors trial by jury, and the right should be carefully guarded against infringements. [Citation omitted.]") *Bourne v. Atchison, T. & S. F. Rly. Co.*, 209 Kan. 511, 516, 497 P.2d 110 (1972).

Furthermore, K.S.A. 22-3403(1) provides that all trials of felony cases shall be by jury unless the defendant and prosecuting attorney, with the consent of the court, submit the trial of a felony to the court. Although a defendant may waive this right, for the waiver to be effective "the defendant must first be advised by the court of his right to a jury trial, and he must personally waive this right

in writing or in open court for the record." *State v. Irving*, 216 Kan. 588, 590, 533 P.2d 1225 (1975). "Whether this test is satisfied in any given case will depend on the particular facts and circumstances of that case, but a waiver of the right to a jury trial will not be presumed from a silent record. [Citations omitted.]" 216 Kan. at 589.

Larraco argues that there is no written or oral record that he knowingly and voluntarily waived his right to a jury trial. Indeed, no written waiver of Larraco's right to a jury trial is included in the record on appeal. The only transcripts provided of proceedings before the district court are of Larraco's arraignment, the preliminary hearing testimony of Rosa-Moreno, Larraco's bench trial, and sentencing.

We review briefly what was said to Larraco about the trial and a jury. When addressing Larraco at the arraignment, the trial judge did tell Larraco that if he chose to enter a not guilty plea on all of the charges, he would "be entitled to a jury trial. At that jury trial, the State would be required to prove these charges beyond a reasonable doubt before you could be convicted." The trial judge explained the sentences Larraco could be facing:

"INTERPRETER: Could I explain to him that this is only if he's convicted?

"THE COURT: I will explain that to him. These sentences could only be imposed if you are convicted. It would not be imposed if you plead not guilty, at least, not today. The State would have to prove the charges before these sentences could be imposed. *If the jury trial resulted in a not guilty finding by the jury, if the jury found you not guilty, you would have no sentences.*

"INTERPRETER: I have a letter where they accuse me. They are telling the truth that they were taking me in because they were trying to get the other guy for drugs.

"THE COURT: Well, that is a matter to present at trial. It doesn't really have any bearing today.

"INTERPRETER: That's the letter that they were giving me that I was accused with, the Complaint.

"THE COURT: If you believe you have evidence to present, you would present it at trial. And, you should show that letter to your attorney, if you have it. I believe, if you are unable to enter a plea of not guilty, I will enter one for you.

"INTERPRETER: He said, 'I can't do it, because it's not true.'

"THE COURT:    Well, I'm going to enter a plea of not guilty on all six charges in the Complaint, and direct that this case be scheduled for pretrial and trial.

"INTERPRETER:  He said that he wants them to present their proof, their evidence. And, I told him that they would during the trial.

"THE COURT:    That is the purpose of a trial, to require the State to prove these charges. If they can not (sic) prove them, you would be found not guilty at the trial. So, that is what we will do. The trial will be set within 90 days unless there is a waiver." (Emphasis added.)

The trial judge spoke to Larraco only about a "jury trial" or a "trial." The difference between a bench trial and jury trial was not explained to Larraco. Based on the record provided, Larraco did not waive his right to a jury trial either by written stipulation or orally on the record.

Following submission of the appellant's brief, the State, in a vain attempt to bolster its argument, added to the record an 'affidavit submitted by Larraco's trial counsel, Linda L. Eckelman, made on October 30, 2003. In her affidavit, Eckelman maintained that she discussed the right to a jury trial several times with the defendant and that when contacted by the trial judge's secretary to set a trial date, she informed the secretary that it would be a bench trial.

While an attorney may make representations to the court which bind the client, defense counsel can only waive the rights of clients as long as those rights are not inherently personal, fundamental rights. See *State v. Rambo,* 10 Kan. App. 2d 418, 423, 699 P.2d 542, *rev. denied* 237 Kan. 888 (1985). In *Crease v. State,* 252 Kan. 326, 334, 845 P.2d 27 (1993), and *State v. Antwine,* 4 Kan. App. 2d 389, 401, 607 P.2d 519 (1980), Kansas appellate courts have concluded that an attorney may not waive a client's constitutional right unless the record shows the attorney has discussed the matter with the client and the client has voluntarily waived the right. If the record is silent, a waiver of a constitutional right will not be presumed. *Antwine,* 4 Kan. App. 2d at 401.

However, the State argues that Larraco's counsel attested in her affidavit that she had discussed with Larraco his right to a jury trial and that he had waived the same. The State asserts that Larraco cannot now claim error simply because the conversation between

himself and his attorney was not made a part of the record. Such assertion misses the point. The cases require the defendant to personally waive the right in writing or in open court. Larraco's attorney could not do this on his behalf by merely talking to the judge's secretary.

While it is possible Larraco was advised of his right to a jury trial, the trial court neither obtained this information from Larraco nor attempted to have him execute a formal waiver of that right as required by *State v. Jones,* 19 Kan. App. 2d 982, 984, 879 P.2d 1141 (1994) (Defendant's right to jury trial can only be waived when defendant is advised by court of his or her right to trial by jury, and defendant personally waives right in writing or in open court.). Because the record does not contain a formal waiver of his right to a jury trial, we must reverse Larraco's convictions and remand the case with directions to grant Larraco a new trial "where he can be afforded that right." 19 Kan. App. 2d at 984.

As we are ordering a new trial, the remaining issues raised by Larraco, except the admissibility of Rosa-Moreno's preliminary hearing testimony, need not be resolved.

## DEPORTED WITNESS

Unless Rosa-Moreno has returned to the United States and is within the jurisdiction, the trial court will be confronted with the issue of using his preliminary hearing testimony at any subsequent new trial. During investigation of Larraco's case, Rosa-Moreno was charged and convicted of a separate crime. The Immigration and Naturalization Service (INS) was prepared to deport Rosa-Moreno to Mexico after his conviction. On April 15, 2002, the State filed a motion asking the court to find that Rosa-Moreno was a material witness. The court ordered Rosa-Moreno held as a material witness. Fifteen days after the district court-ordered hold was filed, Rosa-Moreno testified at Larraco's preliminary hearing on April 30, 2002.

Then, on August 1, 2002, Rosa-Moreno was served with a subpoena to be at Larraco's trial on September 18, 2002. However, on August 2, 2002, an order was entered releasing Rosa-Moreno. The order stated: "[A]fter reviewing the files and being fully ad-

vised in the premises," Rosa-Moreno was "no longer needed to be held in Ford County Detention Center as a witness in *State v. Larraco,* Ford County Case 02 CR 03."

As previously noted, the State submitted the affidavit from Larraco's counsel. Relevant to this issue, Eckelman's affidavit indicated she had cross-examined Rosa-Moreno at the preliminary hearing and she was aware that (1) the State had a "court ordered hold" on Rosa-Moreno to enable him to testify in Larraco's case; (2) Rosa-Moreno was demanding to be released from the hold which kept him in jail; (3) the Ford County assistant attorney had been contacted twice by the Mexican Consulate; and (4) Rosa-Moreno had written letters to the Ford County attorney.

Eckelman's affidavit further explained that she had discussed releasing the hold on Rosa-Moreno with the Ford County assistant attorney on July 29, 2002. The State informed Eckelman that, even if the court-ordered hold was released, the INS would not deport Rosa-Moreno if he had been subpoenaed to testify. Therefore, Eckelman directed the Ford County assistant attorney to prepare the order releasing the court-ordered hold on Rosa-Moreno. Further, Eckelman allowed the State to communicate to the judge that "[she] was okay with" Rosa-Moreno being released.

Evidently, the affidavit referred to four letters sent between the Ford County Attorney's Office and the Mexican Consulate regarding Rosa-Moreno. The letters from the Consulate questioned whether Rosa-Moreno's testimony could be videotaped so that he could be released. The Consul of Mexico, Fernando Gonzalez, considered it "cruel and unusual punishment to keep in jail a person who has paid his debt to society." The Ford County Attorney's Office responded that Rosa-Moreno had been sentenced to 12 months' probation; however, the State added that he would be held until Larraco had been sentenced or until Rosa-Moreno was no longer needed to testify in Larraco's case. The Consulate again requested that Rosa-Moreno's testimony be videotaped as "his detention is in fact an additional punishment and is costing the tax payer also." The Ford County Attorney's Office then responded:

"[Rosa-Moreno] currently has an INS hold and will be taken into their custody as soon as he is no longer needed in the Ford County case. He will then be presented for prosecution in the Federal Courts.

"A video taped interview is not an appropriate answer in this matter and would also be an added expense to the county. By placing a court ordered hold on [Rosa-Moreno], we are assuring his presence in court before he is taken into federal custody."

With this factual background, we briefly review the law. K.S.A. 2003 Supp. 60-460(c) allows prior testimony from a preliminary hearing in the same criminal matter to be admitted if the trial judge finds the declarant is unavailable and the admission of the testimony does not violate the adverse party's right to confront the witness. As always, an appellate court's standard of review regarding a trial court's admission of evidence is abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. One who asserts that the court abused its discretion bears the burden of proof. *State v. Jenkins,* 272 Kan. 1366, 1378, 39 P.3d 47 (2002).

Larraco does not contend his right to confront an adverse party was violated; he only argues Rosa-Moreno should *not* have been found unavailable to testify. K.S.A. 60-459(g) provides five situations in which a witness may be found unavailable. Rather than claiming that none of the five situations were applicable, Larraco maintains the State created the situation making Rosa-Moreno unavailable for trial. K.S.A. 60-459(g) explains that a witness cannot be deemed unavailable:

"(1) if the judge finds that his or her exemption, disqualification, inability or absence is due to procurement or wrongdoing of the proponent of his or her statement for the purpose of preventing the witness from attending or testifying, or the culpable neglect of such party."

Although the district court did not state the grounds upon which it found Rosa-Moreno to be an unavailable witness, the record suggests the trial judge determined Rosa-Moreno was beyond the jurisdiction of the court. At trial, the State introduced an affidavit from a court services officer attesting that Rosa-Moreno was earlier

deported to Mexico. An account of the further discussions about the availability of Rosa-Moreno follows:

"MRS. ECKELMAN: . . . Your Honor, I would object to the admissibility, of this transcript, because I don't think they've laid a sufficient foundation to show admissibility. I think that one of criteria that's required is that he has to issue a Subpoena that's been returned showing this person not found, as well as any Affidavits, then, in explanation of why they were unable to serve 'em.

. . . .

"MR. SAUER: . . . This is a partial transcript of a proceeding that was held previously in this case, that being the preliminary examination.

At that preliminary examination, [Rosa-Moreno] did testify. Mrs. Eckelman was present . . . she did conduct cross-examination. . .[and] from Exhibit 1, you can see that [Rosa-Moreno] is absent from the jurisdiction of this Court. This Court has no jurisdiction to compel his attendance from Mexico. He was served a Subpoena to testify prior to his deportation back to Mexico. But, as a result, that witness is not available, and the State is offering into evidence State's Exhibit 2 [the prior preliminary hearing testimony].

"THE COURT: May I ask where was [Rosa-Moreno] when he was served the Subpoena?

"MR. SAUER: He was still in the Ford County Detention Center, Your Honor.

"THE COURT: And, how was it that he then was removed from the jurisdiction?

"MR. SAUER: While he was there in the Ford County Detention Center, the I.N.S. had a hold on him. He had previously been deported from the United States to Mexico and returned here illegally. Charges were brought against him. He was convicted of a matter that was discovered during the investigation of this case. Because of that, as soon as this Court released a hold on him, the I.N.S. did deport him back to Mexico.

"THE COURT: Any further objection, Mrs. Eckelman?

"MRS. ECKELMAN: No, Your Honor.

"THE COURT: Objections overruled. I find that the witness identified as [Rosa-Moreno] is unavailable, and therefore his prerecorded testimony should be admitted, and it is admitted as State's Exhibit 2."

K.S.A. 60-459(g) defines "unavailable as a witness" as including situations where the witness is "(4) absent beyond the jurisdiction of the court to compel appearance by its process." Certainly, if Rosa-Moreno was in Mexico, he was beyond the jurisdiction of the trial court. But our inquiry must go further since Rosa-Moreno was within the court's jurisdiction when the State released him, thus facilitating his deportation.

K.S.A. 60-459(g) further provides that a witness is unavailable when he or she is "(5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts." Before a witness may be declared unavailable, the State must present "actual evidence of its efforts" demonstrating the exercise of due diligence and good faith to produce the witness at trial. See *State v. Rodriguez-Garcia*, 27 Kan. App. 2d 439, 442, 8 P.3d 3 (1999), *rev. denied* 269 Kan. 939 (2000). The question whether the State has exercised due diligence in locating a witness "turns on the totality of the facts and circumstances of each case, and the trial court's determination that a witness is unavailable to testify will not be disturbed on appeal absent an abuse of discretion." *State v. Harris*, 27 Kan. App. 2d 41, 48, 998 P.2d 524 (2000) (quoting *State v. Zamora*, 263 Kan. 340, 342, 949 P.2d 621 [1997]).

Larraco maintains the State acted unreasonably in failing to exert any effort to ensure that Rosa-Moreno would be able to return to the United States should he be deported. To delineate the actions necessary to satisfy the due diligence standard, we turn to decisions from other jurisdictions.

In *United States v. Mann*, 590 F.2d 361 (1st Cir. 1978), a 17-year-old Australian, Shine, was detained in Puerto Rico when she was found in possession of cocaine. Charges were dropped against Shine, and the State took her deposition before returning her airplane tickets and passport. Although Shine told the prosecution at her deposition that she would honor a subpoena, she did not return from Australia for the trial of her traveling companion, Mann, who was the principal defendant. One of the issues raised on appeal was whether the trial court erred in admitting Shine's deposition into evidence.

The First Circuit Court of Appeals considered the language of Rule 804(a)(5) of the Federal Rules of Evidence which defines a deponent as unavailable if he or she " 'is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . by process or other reasonable means.' " 590 F.2d at 367. Citing language from several other circuit courts, the *Mann* court stated that "[e]ven where the absent witness is beyond the court's jurisdiction, 'the government must show diligent effort on its part to secure the [witness'] voluntary return to testify.' [Citation omitted.]" 590 F.2d at 367. The court determined that reasonable efforts extend beyond issuance of a subpoena, and the duty to use reasonable means carried with it the implicit obligation to prevent a present witness from becoming absent. Thus, the court concluded the defendant should not suffer from the State's choice in not pursuing the presence of Shine at Mann's trial. 590 F.2d at 367-68.

In *United States v. Wilson*, 36 F. Supp. 2d 1177 (N.D. Cal. 1999), the chief witness was the defendant's alleged accomplice, Diaz. Diaz refused to travel from Mexico to the United States to testify at Wilson's trial. However, Diaz agreed to be deposed; thus, the government arranged for Diaz' travel expenses and the necessary clearances from the INS. Despite his promises, Diaz did not appear at the scheduled time. The government then sought to introduce Diaz' deposition taken during the course of discovery proceedings in a civil forfeiture action. After surveying cases from the First, Fourth, Fifth, Eighth, and Tenth Circuit Courts of Appeal, the *Wilson* court concluded:

"At a minimum these cases establish that an alien witness who has left the country, either at the government's instigation or through a failure to detain on the government's part, should be found unavailable unless the government took reasonable and good faith efforts before the witness left the United States to ensure that the witness would be available for trial. *Good faith and reasonable efforts require at least some affirmative action, such as issuing a subpoena, arrangement and payment of travel expenses, or taking affirmative steps to ensure the alien remains in the United States until trial is complete.*" (Emphasis added.) 36 F. Supp. 2d at 1182.

The *Wilson* court faulted the government for failing to inform Diaz at the time of his release that he would be expected to return

to testify and for failing to make any attempt to forestall deportation proceedings. The government allowed Diaz to be released from prison "and then took it on faith" that he would not be deported despite a felony conviction for drug trafficking. "The Court cannot accept the notion that no action whatsoever, albeit inadvertent, is the equivalent of some good faith reasonable and affirmative action taken to ensure the witness' presence." 36 F. Supp. 2d at 1182.

Along similar lines, the Tenth Circuit Court of Appeals considered whether the government acted reasonably to assure the presence of witnesses who had been deported at the trial of a defendant held on charges of transporting illegal aliens in *United States v. Eufracio-Torres,* 890 F.2d 266 (10th Cir. 1989). Depositions were taken of the witnesses before they were released into the custody of INS. Before being released, the witnesses were served with subpoenas to appear for trial, were provided with instructions regarding reentry into the United States, and they also received travel reimbursement and appearance fees in connection with the trial. The witnesses did not return to testify, although they had indicated they would. Following an evidentiary hearing, the trial court found the government had exhibited reasonable efforts in good faith to assure the presence of the witnesses at trial.

In its analysis, the Tenth Circuit noted the existent clash between a defendant's right to confrontation and the witnesses' rights to due process: A criminal defendant has the right, pursuant to the Sixth Amendment Confrontation Clause, "to be confronted with the witnesses against him" or her. The competing interest is that of "the witnesses' procedural due process rights," pursuant to the Fifth Amendment Due Process Clause, which provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." The Court then stated: "Aliens, even those who are in this country illegally, are 'persons' guaranteed Fifth Amendment due process. [Citations omitted.]" 890 F.2d at 269-70.

Ultimately, the Tenth Circuit affirmed the trial court's decision and distinguished the facts of *Eufracio-Torres* from those in *Mann.* 890 F.2d at 271. The Tenth Circuit noted that in *Eufracio-Torres* the alien witnesses had been served with subpoenas and given spe-

cific instructions regarding whom to contact concerning their return to testify. 890 F.2d at 271.

In consideration of the foregoing cases, we think the State here acted upon its knowledge that Rosa-Moreno was facing deportation by requesting and receiving a court order to hold Rosa-Moreno to enable him to testify at Larraco's trial. At Larraco's preliminary hearing, Rosa-Moreno expressed his reluctance to remain in prison and to testify:

"Q. (By Mr. Sauer) When did you first meet the Defendant?
"A. He was just hanging around at my friend's house, and I told my friend not to let him in 'cause I didn't like him. He didn't -- My friend didn't understand, so -- Well, I just wanna say this, sir. I don't want nothing (*sic*) to do with this. Now, if he's in the hands of the law, you can do whatever you wanna do with him? I just wanna get out of here. Get with INS.
"Q. No, you answer the questions.
"THE COURT: You have to answer the questions that are put to you, Mr. [Rosa-Moreno]."

In addition to Rosa-Moreno's desire to "[g]et with INS," letters from the Mexican Consulate requested the State's cooperation in releasing the hold on Rosa-Moreno. While the State was in a position not to be envied, only assertions of counsel stand in support of the State's claim that the INS had issued an assurance that it would honor a subpoena for Rosa-Moreno. Certainly, the State did not express to the court any surprise that Rosa-Moreno was deported within 1 week of the district court's removal of its hold. Also, in the record provided, there is no evidence that the State took any additional action to assure Rosa-Moreno's presence at trial, such as making travel arrangements or consulting with the INS about the necessary considerations for facilitating Rosa-Moreno's return from Mexico to testify at Larraco's trial. We conclude that the State made no reasonable efforts to assure Rosa-Moreno's presence at trial when compared to *Eufracio-Torres, Mann, and Wilson.*

We also recognize that when reviewing a constitutional challenge to the admission of evidence, an appellate court applies the federal constitutional rule. "Under that rule, an error may not be held to be harmless unless the appellate court is willing to declare beyond

a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. [Citation omitted.]" *State v. Groschang*, 272 Kan. 652, 671, 36 P.3d 231 (2001).

Here, when making findings of guilt, the trial judge stated that Rosa-Moreno's testimony proved that Larraco was guilty of aggravated assault. Further, Larraco's conviction for criminal threat was sustained on the basis of Rosa-Moreno's testimony. Also, from the statements of all the witnesses, the trial judge found Larraco guilty of aggravated burglary. The admission of Rosa-Moreno's preliminary hearing testimony cannot be deemed harmless.

Therefore, because the alien witness was within the control of the State before his deportation, we believe that it was an abuse of discretion to admit the preliminary hearing testimony of the deported alien witness without first holding an evidentiary hearing and finding that the State had made reasonable efforts to assure the presence of the alien witness at trial.

Reversed and remanded for a new trial with directions to not admit the testimony of the alien witness at any new trial unless an evidentiary hearing discloses sufficient evidence that the State made a reasonable effort to assure his presence.

Reversed and remanded with directions.