NOT DESIGNATED FOR PUBLICATION

No. 127,616

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DONALD L. BAKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID DAHL, judge. Submitted without oral argument. Opinion filed February 13, 2026. Affirmed in part and vacated in part.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., HILL and ATCHESON, JJ.

PER CURIAM: Donald L. Baker, convicted of several serious sex crimes, seeks a new trial. Baker claims the trial court erred when it ruled that one of his accusers was unavailable for trial and then allowed the State to admit the transcript of her preliminary hearing testimony as a substitute for her trial testimony. Baker argues that the State did not show it had made reasonable efforts to find her. He contends the court denied his constitutional right to confront his accusers. Baker also contests the court's assessments of two fees as costs.

An unshakeable tenet of our criminal jurisprudence is that all persons accused of crimes have a right to confront their accusers at their trial. But there are times when witnesses disappear. In such situations, if the State has shown due diligence in trying to bring the witness to the trial, the trial court may admit the preliminary hearing testimony of that absent witness as evidence at the trial if the court is satisfied that the defendant had the opportunity to cross-examine that witness at the preliminary hearing. *State v. Zamora*, 263 Kan. 340, 342, 949 P.2d 621 (1997). Thus, we must review this case to see if the State has shown due diligence in trying to bring this witness to Baker's trial.

*Some background facts provide a context for our ruling.*

In May 2020, Baker encountered two girls, A.M. and A.R.—both minors, both runaways—who asked him for a ride. Baker let them into his truck, drove them to a convenience store for cigarettes, then took them back to his house. While at Baker's house, Baker served both girls alcohol and drugs before Baker raped A.M. and sexually assaulted both girls.

Based on Baker's actions, the State charged Baker with several serious crimes. The charges included aggravated indecent liberties with the two minors, criminal sodomy, contributing to a child's misconduct or deprivation for both girls, and furnishing alcohol to a minor. In due course, Baker was bound over for trial after his preliminary hearing, at which both girls testified, and the matter was set for a bench trial at Baker's request.

Before trial, the State asked the district court to declare A.R. unavailable as a witness and sought permission to use her preliminary hearing testimony instead. Baker objected, and the court took evidence on the matter.

*The record shows the State made reasonable efforts to track down this runaway teenage witness.*

At the hearing on the State's motion, the State presented the testimony of Sedgwick County Sheriff's Detective Daniel Ribble. Ribble testified that, eight days before trial, he could not locate A.R.—who had been in the State's custody. Ribble then made contact with a social worker with the Department for Children and Families, who reported that A.R. was no longer in the State's custody. Ribble testified that A.R.'s information on the DCF and St. Francis Ministries databases was three years old, which confirmed that she had no recent contact with either organization. Ribble also testified that A.R. did not have a driving license nor did utility or credit databases have an address or phone number for A.R.

Ribble also tried all the phone numbers previously associated with A.R. from the initial 2020 investigation. The bench trial was set for November 2023. He then called A.R.'s mother, but no one answered, so he left a voicemail. Ribble next called A.R.'s father, who answered and informed Ribble that A.R. lived with her mother and A.R.'s father was unsure where A.R. or her mother resided. A.R.'s father said he would try contacting A.R.'s mother and, should he be successful, tell her to contact Ribble.

Next, Ribble investigated a former address associated with A.R.'s mother in Junction City, Kansas. He asked that a Junction City police officer go to the address—an apartment complex—and contact the apartment manager. The police department declined to send an officer because Ribble did not have the apartment number. The department, however, did investigate a different address for A.R.'s mother, discovering that A.R. and her mother had resided there until the end of August 2023 before moving. That officer relayed that no forwarding address had been provided.

In a final attempt to locate A.R., Ribble made contact with Fort Riley Army base—A.R.'s mother's last-known duty station. The military base confirmed that A.R.'s mother had been stationed at the base but was no longer assigned there. The base was unable to inform Ribble whether she had been reassigned or discharged.

As of the day of the bench trial, Ribble testified that he had not received any return phone calls from either of A.R.'s parents, nor did he have any information of A.R.'s whereabouts.

Baker, in his brief, brands these efforts to find A.R. as a "cursory effort." The State argues that this was a display of "due diligence" as required by the law. The district court agreed with the State, finding that "more than reasonable diligence [was] exercised" in the State's efforts to locate the witness and granted the State's motion to admit A.R.'s preliminary hearing testimony.

*What is due diligence?*

In a trial setting, the answer to the question, "What is due diligence?" is within a trial court's discretion. See *State v. Green*, 320 Kan. 539, 551, 570 P.3d 1189 (2025). Then, in due course, in our appellate review of the court's answer, we look for an abuse of that trial court's discretion. A judicial action constitutes an abuse of discretion if it "(1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025).

An earlier opinion from our court offers us guidance. In *State v. Harris*, 27 Kan. App. 2d 41, 998 P.2d 524 (2000), Harris was convicted of voluntary manslaughter. On appeal, Harris challenged the trial court's finding that a witness for the State, Laron Berry, was unavailable. The *Harris* panel described the testimony regarding whether Berry was an unavailable witness:

"In the case at hand, investigator Tom Tomasic testified about his attempts to locate Berry. Tomasic testified that after the subpoena was issued on May 13, 1997, he went to Berry's residence on two or three occasions. Tomasic spoke to Berry's landlord who informed him that he was trying to evict Berry. Tomasic also went to the home of Berry's mother several times. Because Berry was under court supervision in another matter, Tomasic was able to speak to Berry on the day before trial but was unable to convince Berry to testify. Berry was not there when Tomasic went to pick him up. Tomasic attempted to use a social security trace to locate Berry but was unsuccessful. Berry's mother said that Berry was in the hospital, but Tomasic could not find him at the three hospitals he checked." 27 Kan. App. 2d at 48.

Based on those circumstances, the *Harris* panel concluded that "a reasonable person would agree that the State utilized due diligence in attempting to procure Berry's testimony, and the trial court did not err in determining that Berry was unavailable." 27 Kan. App. 2d at 48.

We find those facts comparable to the efforts of Ribble here. Ribble's efforts to locate A.R. were extensive and diligent. His efforts are similar to those which the *Harris* panel found to be diligent. See 27 Kan. App. 2d at 48.

Thus, in our view, the trial court's determination that the State acted in good faith and made a diligent effort to obtain A.R.'s presence at trial was reasonable and not an abuse of discretion. Further, the trial court's finding that the State could admit A.R.'s preliminary hearing testimony was reasonable because Baker had an opportunity to confront A.R. and fully examine her.

*We find no error in the court ordering a Children's Advocacy Center fee for each conviction.*

Baker argues that the sentencing court erred by imposing a Children's Advocacy Center fee under K.S.A. 20-370 for *each* of his four sex crime convictions. The plain meaning of the statute leads us to conclude that the sentencing court was correct.

The statute, K.S.A. 20-370(a), provides: "On and after July 1, 2013, any defendant convicted of a crime under chapter 21 of the Kansas Statutes Annotated, and amendments thereto, in which a minor is a victim, shall pay an assessment fee in the amount of $400 to the clerk of the district court." Baker was convicted of four such crimes and, therefore, an assessment for each conviction is proper.

Other panels of this court have held that, under K.S.A. 20-370, the Legislature intended for a single criminal defendant convicted of multiple crimes against minors to pay a fee for each crime committed against minors. See *State v. Sanders*, 65 Kan. App. 2d 236, 264, 563 P.3d 234, *rev. denied* 320 Kan. 867 (2025); *State v. McDuffie*, No. 113,987, 2017 WL 2617648, at *21 (Kan. App. 2017) (unpublished opinion). We agree with their holdings.

The Children's Advocacy Center fee assessment here was proper.

*We vacate an order directing payment of two fees.*

In the journal entry, Baker is ordered to pay two fees which were not announced at sentencing: a $10 witness fee and a $96.50 "B.F.A.W." fee. We take that initialism to mean Bond Forfeiture Alias Warrant fee.

The State concedes this error.

Because the sentencing court failed to approve either of these fees on the record, taxing the fees against Baker in the journal entry was erroneous. Accordingly, we vacate the order and judgment for those fees.

Affirmed in part and vacated in part.