NOT DESIGNATED FOR PUBLICATION

No. 113,212

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICO J. BROWN, SR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed November 23, 2016. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ATCHESON, P.J., LEBEN, J., and HEBERT, S.J.


*Per Curiam*: Defendant Rico J. Brown, Sr., appeals felony and misdemeanor convictions rendered by the Sedgwick County District Court following a bench trial on charges arising from a sex-for-hire scheme. Brown contends his waiver of jury trial was legally ineffective; the district court impermissibly permitted the State to use the preliminary hearing testimony of one of his victims when she failed to appear at trial; the requirements of the Kansas Offender Registration Act (KORA) impose retroactive punishment on him in violation of ex post facto protections in the United States Constitution; and he should have been appointed a new lawyer for sentencing. We find

1

Brown's contentions to be unavailing and, therefore, affirm his convictions and the resulting judgment.

Given the points Brown has raised on appeal, we need not detail the evidence presented at trial. We outline the charges and their disposition. Brown was charged with and convicted of aggravated human trafficking in violation of K.S.A. 2015 Supp. 21-5426(b)(4), a severity level 1 person felony, for "recruiting, harboring, . . . or [otherwise] obtaining" A.L.H., a 17-year-old female, to perform sex acts with other persons for the sexual gratification of those persons. A.L.H. was paid for those acts and then turned the money over to Brown.

At the same time, Brown arranged for M.J., his adult girlfriend, to work as a prostitute. As to M.J., the State charged Brown in the alternative with human trafficking or promoting the sale of sexual relations in violation of K.S.A. 2015 Supp. 21-6420, a severity level 9 person felony. The district court convicted Brown of promoting the sale of sexual relations. The district court's decision makes an ambiguity in the charging document irrelevant. The information recited allegations against Brown supporting aggravated human trafficking and referred to the statutory subsection for that crime but identified the offense as human trafficking and cited the penalty for human trafficking.

The State charged Brown with aggravated battery, a felony violation of K.S.A. 2015 Supp. 21-5413, for striking M.J. The district court convicted Brown of the lesser included offense of misdemeanor battery. Finally, the district court convicted Brown of violating a protective order, a misdemeanor under K.S.A. 2015 Supp. 21-5924, for communicating with M.J. contrary to a no-contact order entered when Brown appeared in the district court on the other charges.

The district court heard evidence for 2 days in late October and 1 day in early November 2014 and entered a detailed judgment of conviction from the bench about 2

weeks later. In January 2015, the district court sentenced Brown to a controlling 258-month term of imprisonment, reflecting the low presumptive sentence for aggravated human trafficking based on his criminal history classification. Brown has timely appealed. We take up the points Brown has raised, augmenting our discussion of the record as necessary for each.

*Jury Trial Waiver*

The district court conducted a colloquy with Brown and his lawyer to explain both the right to jury trial and the implications of Brown's stated desire to waive that right in favor of a bench trial. A criminal defendant personally must make an informed and voluntary waiver of his or her constitutional right to a jury trial. *State v. Rizo*, 304 Kan. 974, Syl. ¶ 2, 377 P.3d 419 (2016); *State v. Beaman*, 295 Kan. 853, 858-59, 286 P.3d 876 (2012).

Brown contends his waiver was invalid because the district court did not specifically inform him that a jury would have to unanimously agree on a guilty verdict to convict him. The Kansas Supreme Court has rejected that argument. A criminal defendant need not be informed of every aspect of how jurors are selected or how they arrive at a verdict to validly waive a jury trial. See *Rizo*, 304 Kan. at 981. A district court's failure to discuss the requirement for a unanimous verdict does not negate an otherwise informed and voluntary waiver. 304 Kan. at 981; *Beaman*, 295 Kan. at 862 ("[W]e have held a waiver knowingly and voluntarily made even when the district court did not inform the defendant of his right to a unanimous verdict."). Accordingly, Brown has shown no error in his jury-trial waiver.

*Use of Preliminary Hearing Testimony of Absent Witness*

During the bench trial, the prosecutor requested permission to use the preliminary hearing testimony of M.J. because the State had been unable to locate her and secure her attendance. The district court heard evidence on the State's efforts to find M.J. and then declared her to be an unavailable witness, allowing her preliminary hearing testimony to be presented as part of the case against Brown. See K.S.A. 2015 Supp. 60-460(c) (hearsay exception allowing earlier testimony of now-unavailable witness to be admitted as evidence); *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (government may use preliminary hearing testimony from witness unavailable at criminal trial if defendant had fair opportunity to cross-examine witness at hearing, thereby satisfying Sixth Amendment right of confrontation); *State v. Reed*, 302 Kan. 227, 246, 352 P.3d 530 (2015) (same).

Brown contends the State failed to show that M.J. was unavailable and, in any event, he did not have sufficient opportunity to cross-examine her during the preliminary hearing.

As defined in K.S.A. 60-459(g)(5), an unavailable witness is "absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts." Accordingly, the State had to show that it acted in good faith in making a diligent effort to find M.J. and to serve her with a subpoena or otherwise secure her attendance at the trial. *State v. Plunkett*, 261 Kan. 1024, 1034, 934 P.2d 113 (1997). The district court is to assess the State's good faith and the sufficiency of its effort based on all of the circumstances. See *State v. Flournoy*, 272 Kan. 784, 800, 36 P.3d 273 (2001); *State v. Cook*, 259 Kan. 370, 376, 913 P.2d 97 (1996). The State need not exhaust all possible means of finding witnesses. The measure of that effort is one of reasonable diligence. See *State v. Alderdice*, 221 Kan. 684, 687, 561 P.2d 845 (1977).

4

We, in turn, apply an abuse of discretion standard to the district court's call in allowing the State to substitute past testimony for a witness' in-person appearance at trial. *State v. Zamora*, 263 Kan. 340, 342, 949 P.2d 621 (1997); *State v. Dunerway*, No. 111,457, 2015 WL 5224703, at *6 (Kan. App. 2015) (unpublished opinion). A district court may be said to have abused its discretion if the result it reaches is "arbitrary, fanciful, or unreasonable." *Unruh v. Purina Mills*, 289 Kan. 1185, 1202, 221 P.3d 1130 (2009). That is, no reasonable judicial officer would have come to the same conclusion if presented with the same record evidence. An abuse of discretion may also occur if the district court fails to consider or to properly apply controlling legal standards. *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009). A district court errs in that way when its decision "'goes outside the framework of or fails to properly consider statutory limitations or legal standards.'" 288 Kan. at 299 (quoting *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 [2007]). Finally, a district court may abuse its discretion if a factual predicate necessary for the challenged judicial decision lacks substantial support in the record. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013) (outlining all three bases for an abuse of discretion); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

A Wichita police officer involved in the investigation of Brown testified that M.J. voluntarily appeared at the preliminary hearing. Shortly before the trial, the district attorney's office asked the officer to help locate M.J. The officer tried without success to contact M.J. through telephone numbers M.J. had given her. The officer also paid multiple visits to a Wichita methadone clinic that M.J. was known to frequent and asked patrol officers assigned to that area of the city to be looking for M.J. The officer received information that M.J. had left Kansas for Arizona with Anthony Thomas, a man with whom she had been involved. Both M.J. and Thomas were originally from Arizona. The officer did not testify about any efforts to locate M.J. in Arizona. Although the officer had contact information for M.J.'s parents, she did not talk with either of them. M.J.'s

father lived in Kansas and apparently had physical custody of M.J.'s children. M.J.'s mother lived in California. The Wichita Police Department also circulated M.J.'s photograph to members of its community policing team—officers assigned principally to proactive duties, including searching for wanted or missing persons, rather than to traffic enforcement or responding to calls for service. None of those efforts proved fruitful.

The district attorney's office assigned one of its investigators to locate M.J. He worked through a utility company and examined internet postings to develop leads on M.J. The utility company provided a telephone number. But when the investigator called the number, the woman answering disclaimed any knowledge of M.J. The investigator also turned up leads on people associated with M.J., including Thomas. The investigator uncovered some loose circumstantial evidence that M.J. and Thomas might have gone to California. Those leads, however, never ripened into useful contact information for M.J.

The district court found that the State acted in good faith and exercised sufficient diligence in attempting to secure M.J.'s presence as a witness at trial. The district court understood the governing legal principles and what the police and the district attorney's office did to find M.J. Brown does not argue otherwise. Rather, he contends the State was less than diligent and, more precisely on appeal, that the district court abused its discretion in finding sufficient diligence.

We, therefore, ask whether no reasonable district court could have come to that conclusion on the record evidence. We are not prepared to say the district court's conclusion was unreasonable in that way. The police and the district attorney's investigator devoted considerable time and effort to find M.J. The police department enlisted a number of officers and varied approaches to the task, and the investigator developed leads from an array of sources. At the same time, however, the evidence at least suggests less than a closely coordinated effort by the police department and the district attorney's office. And nobody contacted either of M.J.'s parents—a pronounced

6

omission at least based on the hearing record. But a lack of coordination and a missed opportunity do not add up to an abuse of judicial discretion in assessing the State's diligence. We cannot say the district court erred in finding the requisite good faith and diligent effort to permit the use of M.J.'s preliminary hearing testimony in place of her appearance as a live witness at trial.

Alternatively, Brown argues the preliminary hearing testimony should have been excluded because he did not have a full, fair opportunity to cross-examine M.J. Brown suggests this must be so, since he was represented by one court-appointed lawyer during the preliminary hearing and by a second court-appointed lawyer at trial. A change in lawyers, however, does not in and of itself indicate Brown was deprived of a legally adequate chance to question M.J. On appeal, he offers no tangible examples of how the opportunity might have been squandered because he had different lawyers at different stages of the prosecution. In short, a change in legal representation isn't enough.

Brown also argues exculpatory evidence came to light after the preliminary hearing, so his lawyer had no opportunity to cross-examine M.J. about that evidence. We put to one side the somewhat abstract legal question of whether the disclosure or development of evidence beneficial to a defendant after a preliminary hearing could, in some situations, preclude the State from using the hearing testimony of a witness unavailable for trial.

In this case, Brown suffered no demonstrable prejudice at trial, making any possible error harmless. The additional evidence consisted of advertisements M.J. placed on an internet site after Brown's arrest offering her services as a "date" for interested men. The ads were similar to those she used while she was with Brown. On appeal, Brown submits that M.J.'s later advertisements show she was voluntarily engaging in that activity rather than acting under some compulsion or deception he exerted. Assuming that to be so for the sake of argument, the evidence bears on an element of the human

7

trafficking charge against Brown requiring him to have used force, fraud, or coercion to induce M.J. to engage involuntarily in commercial sex trade. See K.S.A. 2015 Supp. 21-5426(a)(1), (b)(2). But the district court acquitted Brown of that charge and found him guilty of the alternative charge of promoting the sale of sexual relations, a violation of K.S.A. 2015 Supp. 21-6420. Promoting the sale of sexual relations has no comparable element resting on force or deception and presumes the voluntary participation of the person engaging in the sex acts. Given that difference and the district court's judgment, Brown could not have been materially prejudiced by the use of M.J.'s preliminary hearing testimony at trial simply because evidence later came to light suggesting she voluntarily engaged in prostitution.

### KORA as Ex Post Facto Violation

Brown contends the requirement that he register under KORA and submit to the Act's other impositions and disclosures violates the Ex Post Facto Clause of the United States Constitution. See U.S. Const. art. 1, § 10. A statute contravenes the Ex Post Facto Clause if it retroactively either criminalizes conduct that had not been proscribed or increases the punishment for conduct already treated as criminal. *Carmell v. Texas*, 529 U.S. 513, 540, 120 S. Ct. 1620, 146 L. Ed. 2d 577 (2000); *State v. Myers*, 260 Kan. 669, Syl. ¶ 5, 923 P.2d 1024 (1996). Brown argues that imposing the registration requirements of KORA on him increased the punishment for his aggravated human trafficking conviction, since the crime did not require registration at the time he committed it.

The argument fails because a majority of the Kansas Supreme Court recently held that KORA does not amount to punishment for defendants committing sex offenses. *State v. Petersen-Beard*, 304 Kan. 192, 209, 377 P.3d 1127 (2016) (lifetime registration under KORA for defendants convicted of sex offenses is not punishment under either United States Constitution or Kansas Constitution). Although *Petersen-Beard* specifically rejected a constitutional challenge to KORA registration as cruel and unusual

8

punishment, the majority plainly recognized its holding that the Act does not impose punishment also would be applicable to and defeat an ex post facto argument. 304 Kan. at 196.

Accordingly, Brown's ex post facto attack on the requirement he register under KORA fails based on the rationale of *Petersen-Beard*.

*Appointment of Substitute Counsel for Sentencing*

Before sentencing, Brown drafted and filed his own motion for a new trial alleging his lawyer performed so poorly as to deprive him of his Sixth Amendment right to the assistance of competent counsel. See *Strickland v. Washington*, 466 U.S. 668, 686, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The motion augmented the one Brown's lawyer filed on other grounds. The district court denied the motion Brown's lawyer submitted, and that ruling has not been appealed.

The district court declined to rule on Brown's own motion because the claimed ineffective assistance of counsel could be addressed in a request for habeas corpus relief, as provided in K.S.A. 60-1507, following the completion of any direct appeals. A criminal defendant's challenge to the sufficiency of his or her legal representation commonly will be deferred to a habeas corpus proceeding. See *State v. Hargrove*, 48 Kan. App. 2d 522, 554, 293 P.3d 787 (2013); *State v. Uwadia*, 47 Kan. App. 2d 829, 838, 279 P.3d 731 (2012). There are at least a couple of reasons for doing so. If a criminal defendant asserts another meritorious issue on direct appeal, he or she typically will be granted a new trial, thereby rendering the ineffective assistance claim moot. Second, a colorable ineffectiveness claim usually requires an evidentiary hearing in which the defendant and trial counsel may offer differing factual accounts of their professional relationship and trial counsel presumably will be called upon to explain strategic decisions he or she made in handling the case. Depending upon the scope of the

9

ineffectiveness claims, a full evidentiary hearing may substantially delay any direct appeal.

On appeal, Brown does not directly complain about the district court's decision to defer ruling on the ineffectiveness claims he raised. Rather, he contends his motion should have prompted the district court to inquire into whether the very assertion of allegations of ineffectiveness precluded the lawyer from continuing to represent him at the sentencing hearing. Under the circumstances, we fail to see that the district court had a duty to delve into the viability of the professional relationship between Brown and his lawyer.

A criminal defendant must be afforded effective, conflict-free legal representation. See *State v. Brown*, 300 Kan. 565, 574-75, 331 P.3d 797 (2014); *State v. Cheatham*, 296 Kan. 417, 429-30, 292 P.3d 318 (2013); *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012). Criminal defendants unable to afford legal representation are entitled to appointed lawyers meeting that standard, but they do not have the right to personally approve or select a specific lawyer. *Brown*, 300 Kan. at 575.

An indigent criminal defendant has to point to "justifiable dissatisfaction" with an appointed lawyer to warrant a change in legal representation—court appointment of replacement counsel. Justifiable dissatisfaction requires a demonstrable conflict of interest on the lawyer's part, an irreconcilable disagreement between the lawyer and defendant, or a complete breakdown in communication between them. *Brown*, 300 Kan. at 575; *State v. Burnett*, 300 Kan. 419, 449, 329 P.3d 1169 (2014). If a criminal defendant presents a colorable basis for a justifiable dissatisfaction, the district court is obligated to inquire further to assess the factual circumstances. *Brown*, 300 Kan. at 577.

Here, after the trial, Brown filed a motion specifically aimed at securing a new trial—not a new lawyer. Although the motion outlined what he considered significant

10

problems with how the trial had been handled, Brown did not express some dissatisfaction with having his lawyer represent him at sentencing. Brown knew how to ask for a new lawyer when that's what he wanted. He filed at least two motions before trial asking for substitute counsel.

After the district court's entry of judgments of conviction and before sentencing, Brown did not suggest his lawyer had a conflict of interest or that the two of them had some unbridgeable disagreement or had completely stopped communicating. Brown's trial lawyer did not indicate problems of that kind. So the district court had neither a request nor any particular reason to inquire about appointing a new lawyer for Brown.

On appeal, Brown suggests his motion for a new trial inherently created at least a potential conflict because of the allegations of inadequate representation and, thus, imposed a duty on the district court to inquire. We don't accept that premise. Criminal defendants frequently voice allegations that their trial lawyers have been ineffective— sometimes in posttrial motions and certainly in habeas corpus proceedings. Concomitantly, then, criminal defense lawyers are regular recipients of those allegations. They go with the territory. We have no reason to suppose an experienced criminal defense lawyer would be discombobulated by those allegations and, for that reason, would be unable to fulfill their obligation to provide the clients competent representation going forward. Should a lawyer feel so aggrieved as to be incapable of continuing the representation, it would be incumbent upon him or her to make an affirmative request to be replaced. But that would be, in our view, an exceptional situation.

Obviously, when a district court takes up the merits of a defendant's allegations that a lawyer has inadequately represented him or her, the lawyer must step aside in favor of new counsel. See *State v. Toney*, 39 Kan. App. 2d 1036, 1044, 187 P.3d 138 (2008) (criminal defense lawyer generally cannot be expected to argue his or her own ineffectiveness in support of client's motion to withdraw plea). Here, of course, the

11

district court declined to consider the merits of Brown's assertions in deference to a full review in any postconviction proceeding Brown might pursue.

In light of the circumstances in this case, we find the district court had no duty to inquire into the lawyer-client relationship or to appoint Brown a new lawyer for his sentencing.

*Conclusion*

Having considered each of the points Brown presents on appeal, we conclude none of them warrants relief. We, therefore, affirm Brown's convictions and sentence.

Affirmed.