NOT DESIGNATED FOR PUBLICATION

No. 117,718

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NOAH DEMETRIUS REED,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; FAITH A.J. MAUGHAN, judge. Opinion filed October 5, 2018. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY, J., and BURGESS, S.J.

PER CURIAM: Noah Demetrius Reed appeals his convictions for attempted second-degree murder, aggravated kidnapping, and criminal threat. He claims the district court erred in not dismissing one of the jurors at his trial. He also claims the prosecutor erred in misstating evidence during closing argument. Consideration of these issues requires a brief recounting of the facts.

Reed's convictions arise from a domestic disturbance in July 2016, which resulted in Reed stabbing R.D. in the chest. The fight began in R.D.'s apartment, spilled over to a neighbor's apartment, and then continued back in R.D.'s apartment. When the police

1

arrived, R.D. and Reed were both naked and covered in blood, and R.D. had a steak knife sticking out of her chest.

Reed claims he stabbed R.D. in self-defense after she and two accomplices attacked him to steal his money and his marijuana. According to Reed, he and R.D. smoked marijuana earlier in the evening and decided to take a nap. When he awoke, he was attacked by R.D.'s two accomplices who repeatedly asked, "[W]here the weed?" Reed contends that when he ejected the two men from R.D.'s apartment, R.D. came at him with a knife so he turned the knife on her in self-defense.

R.D. testified that Reed began assaulting her in her apartment, continued assaulting her in a neighbor's apartment, and then again assaulted her when they returned to her apartment. R.D.'s neighbor, Elexia Lancaster, testified that R.D. and Reed came to her apartment to search for a cell phone. Reed was upset because he thought R.D. had stolen some money from him. Lancaster testified that Reed physically assaulted R.D. in her presence. The police found signs of a disturbance and blood in the neighbor's apartment and in R.D.'s apartment. R.D.'s blood test showed that she had not consumed any marijuana.

Reed was charged with attempted first-degree murder, aggravated burglary, attempted rape, criminal threat, and aggravated kidnapping.

During the lunch break on the first day of trial, juror M.I., a unit clerk in the critical care and immediate care units at Via Christi Hospital, informed the court that she heard some gossip, apparently from Wesley Medical Center, about the case and learned "some details about the victim, like the stab wounds—I'm familiar with it." She said she had no contact with R.D. She did not talk to any of R.D.'s doctors or view any of R.D.'s medical records. The gossip she heard and her first impression favored the State, but she believed she could decide the case based solely on the evidence presented at trial.

Reed moved to have M.I. removed from the jury and to substitute an alternate. The court found that there was no evidence that created a concern about M.I.'s ability to be fair and unbiased. M.I. had no information about how the injuries occurred and "a lot of what she has heard is probably going to be what is testified to by doctors and everything else presented." The court denied Reed's request to have M.I. removed.

Sarah Geering, a forensic scientist in the DNA lab at the Sedgwick County Regional Forensic Science Center, testified about the results of DNA tests of blood samples collected from the crime scene. She stated:

> "The swab collected from this bedroom doorframe is a mixture of at least two individuals. Again, I was able to do some major/minor contributions here. The major contributor is consistent with [R.D.]. Therefore, [R.D.] cannot be excluded as the major contributor. Noah Reed is excluded as the major, and minor contributions to this profile were partial and determined to be of no comparative value. So not enough minor to be able to do anything with basically, so I can't make any comparisons to that minor. So then a statistic gets applied in that scenario to the major only, and it's similar to the other one as well. The major contributor is 1 in 4.5 quintillion."

With respect to blood samples collected from the breakfast bar in R.D.'s kitchen, Geering stated:

> "So here was have a mixture situation. Again, I was able to deduce out my major contributor . . . .
>
> "So the Swabs obtained from the breakfast bar side of counter is a mixture of at least two. The major is consistent with the profile of [R.D.]. So therefore [R.D.] cannot be excluded as a major. Minor contributions are attributable to Noah Reed. Therefore Noah Reed cannot be excluded as the minor contributor to the profile.
>
> "Again I was able to apply those assumptions saying I'm assuming its two people, that indeed I only have two in play, and that I can assume my major and I can assume my minor. And then I can apply those numbers, and the major would be 1 in 12.3 quadrillion, and the minor would be 1 in 47.5 million."

She stated that she could not statistically exclude a third party as the minor contributor of blood found on the doorframe to R.D.'s bedroom because there was not enough of a sample to make a comparison. The only thing she could determine from this minor sample was that it was likely from a male. She could not determine if it was consistent with Reed or any other person because there was not enough of a sample to make this determination.

In closing argument, the State argued in rebuttal:

"If he's fighting these men and beating him to the point where he can get them out of the apartment on his own, ask yourselves if there would be their blood in that apartment. Would their blood be in that apartment somewhere? But according to Sarah Geering, the victim and the defendant are the contributors to these profiles, there is one that is partial and of no value. But the mixture of contributors, the blood in that apartment, are consistently the defendant and [R.D.]".

Reed objected, and the court overruled the objection, stating: "The jury was here. They heard the testimony. They can make their decisions."

The jury convicted Reed of the lesser included offense of attempted second-degree murder, aggravated kidnapping, and criminal threat. Reed's timely appeal brings this matter to us.

*Refusal to Remove a Juror*

Reed claims that the district court erred in not removing M.I. as a juror because of her bias against him. We review the district court's decision on this matter for any abuse of discretion. *State v. Hilt*, 307 Kan. 112, 121, 406 P.3d 905 (2017). A court abuses its discretion if its action is arbitrary, fanciful, or unreasonable, or is based on an error of law

or fact. *State v. Hilt*, 299 Kan. 176, 186, 322 P.3d 367 (2014) (quoting *State v. Dobbs*, 297 Kan. 1225, 1232, 308 P.3d 1258 [2013]).

A juror should be discharged and an alternate impaneled if the court has reasonable cause to believe the juror is unable to perform his or her duties. *Hilt*, 299 Kan. at 186-87. One such duty is the duty to act impartially and without prejudice. See *State v. Thurber*, 308 Kan. 140, 181, 420 P.3d 389 (2018). But "'juror *impartiality* . . . does not require *ignorance*.'" 308 Kan. at 208 (quoting *Skilling v. United States*, 561 U.S. 358, 381, 130 S. Ct. 2896, 177 L. Ed. 2d 619 [2010]). Thus, the mere fact that M.I. heard that a woman was stabbed does not establish bias.

Reed contends that the district court abused its discretion by basing its decision on an error of fact, i.e., a factual finding which is not supported by substantial competent evidence. See *State v. Schaal*, 305 Kan. 445, 452, 383 P.3d 1284 (2016).

The district court found no indication that M.I. could not be a fair and impartial juror. M.I. stated that she did not know how the injury occurred or the circumstances leading up to the injury, but that she knew that the victim suffered stab wounds. That R.D. was stabbed obviously would be disclosed in the course of the State's case-in-chief. M.I. said she would be able to decide the case based on what she heard at trial and not on the gossip she heard at work. The district court understood M.I.'s testimony about how she initially favored the State's position to mean that she favored the State prior to becoming a juror but she would set aside that initial position once she became a juror. The district court did not abuse its discretion by making an erroneous finding of fact.

Reed makes the global argument that given M.I.'s admission that she began the trial favoring the State, no reasonable jurist would allow such a juror to continue to serve. But "[i]f reasonable persons could differ as to the propriety of the action taken by the trial

court, then it cannot be said that the trial court abused its discretion." *State v. Gant*, 288 Kan. 76, 82, 201 P.3d 673 (2009).

M.I. apparently came to the realization during the morning of the first day of trial that this case involved the stabbing she had heard about at work. M.I. was asked, "Do you think that as a juror you can uphold that oath and make a decision based only on what you hear in the courtroom?" She responded, "I do."

Under similar circumstances, the court in *State v. Zamora*, 263 Kan. 340, 349, 949 P.2d 621 (1997), determined that the district court did not abuse its discretion in finding there was no reason to believe the juror's ability to be fair and impartial was compromised. We conclude that this is not a situation in which no reasonable person would agree with the district court's decision to keep M.I. on the jury. Reed fails to establish an abuse of discretion.

*The State's Closing Argument*

Reed claims that the State committed reversible error when it stated in closing argument that the partial DNA sample found in R.D's apartment was "of no value" when the witness testified that the partial sample was "of no comparative value."

The familiar process for evaluating claims of prosecutorial error is found in *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016):

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional

6

constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]"

The prosecutor's remarks in closing argument must "accurately reflect the evidence." *State v. Anderson*, 294 Kan. 450, Syl. ¶ 4, 276 P.3d 200 (2012). The prosecutor is given wide latitude in presenting the evidence and the reasonable inferences that can be drawn from the evidence. *State v. Morningstar*, 289 Kan. 488, 496, 213 P.3d 1045 (2009). When reviewing a prosecutor's remark, we must consider the statement in the context of the entire argument. See *State v. De La Torre*, 300 Kan. 591, 612, 331 P.3d 815 (2014).

During the State's closing argument, the prosecutor stated:

"If he's fighting these men and beating them to the point where he can get them out of the apartment on his own, ask yourselves if there would be their blood in that apartment. Would their blood be in that apartment somewhere? But according to Sarah Geering, the victim and the defendant are the contributors to these profiles, there is one that is partial and of no value. But the mixture of contributors, the blood in that apartment, are consistently the defendant and [R.D.]".

But Geering testified:

"The swab collected from this bedroom doorframe is a mixture of at least two individuals. Again, I was able to do some major/minor contributions here. The major contributor is consistent with [R.D.] Therefore, [R.D.] cannot be excluded as the major

7

contributor. Noah Reed is excluded as the major, and minor contributions to this profile were partial and determined to be of no comparative value. So not enough minor to be able to do anything with basically, so I can't make any comparisons to that minor. So then a statistic gets applied in that scenario to the major only, and it's similar to the other one as well. The major contributor is 1 in 4.5 quintillion."

She also stated that she could not statistically exclude a third party or Reed as the minor contributor because there was not enough of a sample to make a comparison or a statement about the individual that contributed to the minor sample.

Reed contends that the prosecutor misstated Geering's testimony by changing Geering's statement about the sample having no comparative value to it having no evidentiary value. He argues that the minor sample shows that it is possible that a third party entered the home and assaulted him as he has claimed.

The prosecutor's statement does not misstate the evidence. When read in full and considered in context, the prosecution was arguing that if a third party was present and attacked Reed, there would have been more than a speck of DNA present in the apartment. A reasonable inference can be drawn from Geering's testimony that there was not enough of the minor sample to make any sort of a difference in the case.

Besides, we are satisfied that the prosecutor's argument did not affect the outcome of the case. The evidence of Reed's guilt was substantial and compelling. Reed claimed he and R.D. smoked marijuana earlier in the evening, but no trace of marijuana was found in R.D.'s blood. No marijuana was found, and no odor of marijuana was detected in the apartment. There was no evidence, including DNA evidence, to support Reed's claim that another person attacked him in the apartment. The DNA samples were consistent with Reed and R.D. The neighbor testified that Reed physically assaulted R.D. while in the neighbor's apartment. Reed admitted stabbing R.D. He stabbed her in the face, neck,

8

and chest, suggesting that he was not attempting to fight off an attacker. When the police arrived, Reed blocked their entry into the apartment. It was R.D. who called out for help.

Reed fails to establish error in the conduct of his trial.

Affirmed.